# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY ) <br> as assignee of INTERMET INTERNATIONAL, INC., ) <br> and INTERMET CORPORATION d/b/a Intermet New ) <br> River Foundry and d/b/a Intermet Radford Foundry ) <br> d/b/a New River Castings, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LIBERTY MUTUAL INSURANCE COMPANY, ) <br> NATIONAL UNION FIRE INSURANCE COMPANY ) <br> OF PITTSBURGH, PA, and AMERICAN GUARANTEE ) <br> AND LIABILITY INSURANCE COMPANY, ) <br> ) <br> Defendants. ) | No. 7:06-cv-00462 <br> Judge Glen E. Conrad |

## MEMORANDUM OF LAW OF
## LIBERTY MUTUAL FIRE INSURANCE COMPANY
## IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Liberty Mutual Fire Insurance Company, incorrectly named as "Liberty Mutual Insurance Company" ("Liberty"),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedures, submits this memorandum of law in support of its motion to dismiss the complaint (the "Complaint") of Plaintiff Factory Mutual Insurance Company, as assignee of Intermet

---

[1] Defendant Liberty Mutual Insurance Company, a Massachusetts corporation with its principle place of business in Boston, Massachusetts (Virginia State Corporate Commission ID Number F001609-9), is incorrectly named as a defendant in this action. The Liberty Insurance Contract attached as Exhibit A to the Complaint shows that the correct corporate defendant is "Liberty Mutual Fire Insurance Company," a Wisconsin Corporation with its principle place of business in Boston, Massachusetts (Virginia State Corporation Commission ID Number F002098-4). Accordingly, Factory Mutual brought this Action against the wrong party and thus fails to state a claim upon which relief can be granted as to Liberty Mutual Insurance Company and therefore should be dismissed. Fed. R. Civ. P. 12(b)(6). Substitution of Liberty Mutual Fire Insurance Company would be appropriate. For the purposes of this Motion to Dismiss, "Liberty" is the name used for whichever party the Court determines to be appropriate under the circumstances. Both insurance companies seek dismissal of this Action for the reasons stated herein.

International, Inc., and Internet Corporation d/b/a Intermet New River Foundry, and d/b/a Intermet Radford Foundry d/b/a New River Castings (together referred to as "Factory Mutual" or "Plaintiff"), and states as follows:

## I. SUMMARY OF ARGUMENT

The Complaint fails to state a claim upon which relief can be granted as to Liberty, and thus the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The contract of insurance issued to Intermet Corporation and Intermet International, policy number RG2-641-004228-079, effective November 1, 1999, through November 1, 2000 (the "Liberty Insurance Contract"), a copy of which is attached as Exhibit A to the Complaint, plainly and unambiguously excludes coverage for all damages claimed by Factory Mutual. The Liberty Insurance Contract precludes coverage for "property damage" to "personal property in the care, custody or control of the Insured." All damages alleged by Factory Mutual in the Complaint arise out of damage to personal property in the care, custody or control of Factory Mutual's assignor at the time of loss. Plaintiff's claims are excluded by the plain language of the Liberty Insurance Contract, which requires dismissal of this Action against Liberty.

Moreover, Liberty had no duty to defend Intermet in the underlying action (which was settled and is no longer pending), and therefore has no duty to reimburse any costs associated with that action to Factory Mutual as assignee of Intermet, because the Complaint in the underlying action alleged no damages for which coverage arises under the Liberty Insurance Contract.

All of the underlying documents necessary to resolve this motion to dismiss are appended as exhibits to the Complaint. Accordingly, this Court may dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

### A. The Underlying Factory Mutual Lawsuit Against Intermet

On or about August 12, 2003, Factory Mutual, as subrogee of American Axle Manufacturing, Inc. ("American Axle"), filed suit in the United States District Court for the Western District of Virginia, Roanoke Division, against Intermet seeking to recover amounts that Factory Mutual paid for losses sustained by its insured, American Axle, as a result of a March 5, 2000 explosion and subsequent fire that took place at Intermet's New River Castings facility in Radford, Virginia. *See* Complaint at ¶¶ 1-2.

As set forth in the Complaint filed in this Action, Factory Mutual cites to and relies upon the complaint (the "Underlying Complaint") it filed in its prior underlying litigation (the "Underlying Action") in this Court against Intermet, entitled *Factory Mutual Ins. Co. v. Intermet International, Inc.,* Case No. 7:03 CV 00518, United States District Court for the Western District of Virginia, Roanoke Division.[2] *See* Complaint at ¶¶ 2, 3 and 5.[3] In the Underlying Complaint, Factory Mutual specifically pled that "[a]s a result of Defendant's breach, American

---

[2] In the context of Rule 12(b)(6) Motions, federal courts may consider documents in which judicial notice can be taken without converting such a Motion to a Rule 56 Motion if the documents are incorporated by reference or central to the plaintiffs' claim. *See Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 783 (E.D. Va. 2002) (stating that in ruling on a Rule 12(b)(6) motion, the Court can rely upon the allegations in the complaint and those documents attached as exhibits to the complaint). *See also Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir. 1993) (holding that the court may consider, in addition to the complaint, "matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit"); *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 986 (9th Cir. 1999) (recognizing that the incorporation by reference doctrine permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading when considering a Rule 12(b)(6) motion); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002) (applying the "incorporation by reference" doctrine and explaining that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is (1) central to the plaintiff's claim and (2) undisputed [meaning] that the authenticity of the document is not challenged).

[3] The Court can take judicial notice of the Underlying Complaint. *See* Fed. R. Evid. 201 (permitting courts to take judicial notice of facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned); *Wren v. Cigna Healthcare of Va., Inc.*, 2006 WL 344801, at *2 (W.D. Va. 2006) (taking judicial notice of court pleadings).

- 3 –

Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

Axle's bailed property, which was on Defendant's premises and *within the Defendant's possession and control*, was lost, inaccessible, unusable and/or destroyed, and American Axle thereby sustained *actual property losses* in this occurrence." *See* Underlying Complaint at ¶ 25 (emphasis added).

As referenced in the present Complaint, Factory Mutual asserted causes of action in the Underlying Complaint for Breach of Contract and Negligence in an amount in excess of $2,000,000. Complaint at ¶ 3. Shortly after Factory Mutual filed suit against Intermet, Intermet filed for bankruptcy. Complaint at ¶ 4. As a result of Intermet's bankruptcy, the Underlying Action was temporarily stayed. *Id.* at ¶ 6. Intermet subsequently assigned all of its rights to Factory Mutual to "file, prosecute and/or obtain a declaratory [judgment] for coverage under the Intermet Insurance Policies in lieu of Factory Mutual's direct claims against Intermet." *Id.* at ¶ 7. Plaintiff alleges that as a result of the assignment, Factory Mutual was assigned all of Intermet's contractual rights for coverage and for payments due under its insurance policies. *Id.* at ¶ 33.

### B. Factory Mutual's Lawsuit Against Liberty and Other Insurers

On or about August 1, 2006, Factory Mutual filed this Action against Liberty and two other insurance companies.[4] In the Complaint, Factory Mutual alleges that Liberty and the other insurers breached their duties to defend and indemnify Intermet in the Underlying Action. Factory Mutual's complaint contains six separate causes of action against three defendants. In Count I asserted against Liberty, Factory Mutual contends that Liberty breached its duty to defend and indemnify Intermet with respect to the claims that gave rise to the Underlying Action. *Id.* at Count I (¶ 63-64). In Count II, Factory Mutual seeks a declaration that Liberty was

---

[4] On September 28, 2006, Factual Mutual filed a Notice of Voluntary Dismissal voluntarily dismissing one of the insurers, American Guarantee and Liability Insurance Company, from this lawsuit. National Union remains as another defendant in this case.

required to defend and indemnify Intermet in the Underlying Action. *Id.* at Count II (¶ 69 and Wherefore Clause pp. 13-14).

Factory Mutual alleges that an "explosion…damaged American Axle equipment and castings that were on the site and used in the production of the product which was to satisfy the terms of the contract between Intermet and American Axle." *Id.* at Count I (¶ 43). Similarly, Factory Mutual contends that "the explosion damaged the property of American Axle which was *on site and in the possession of Intermet and being used by Intermet* to manufacture the product to satisfy the terms of the contract between Intermet and American Axle.…" *Id.* at Count I (¶ 50) (emphasis added). Further, Factory Mutual asserts that "the alleged damages included damage to the property of American Axle *being used by and in the possession of Intermet on site* for the manufacture and production of its product." *Id.* at Count I (¶ 54)(emphasis added); *see also* Count III (¶ 47)("the explosion…damaged the American Axle castings in the possession of Intermet and on site being used in the manufacture and production of product …").

Further, Factory Mutual contends that the explosion damaged products and merchandise on the Intermet site being produced pursuant to a contract between Intermet and American Axle. For example, Plaintiff alleges that "the explosion damaged the actual product and merchandise that was to be shipped to American Axle to satisfy the terms of their contract." *Id.* at Count I (¶ 42). Similarly, Plaintiff asserts that the alleged damages were incurred to "property being manufactured and produced by Intermet for their customer, American Axle." *Id.* at Count I (¶53); *see also id.* at Count I (¶ 49)("… the explosion damaged the property being manufactured by Intermet that was to satisfy the terms of the contract …").

The Complaint contains no allegation that the damaged property at issue was outside the care, custody or control of Intermet at the time of the explosion and fire within Intermet's plant.

- 5 –

### C. The Liberty Insurance Contract

Liberty issued to Intermet a commercial general liability policy (No. RG2-641-004228-079, effective November 1, 1999 to November 1, 2000). *See* Complaint at Exhibit "A." The insuring agreement of the Liberty Insurance Contract provides, in relevant part, as follows:

**SECTION I – COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . .

*See* Liberty Insurance Contract, Form No. NRD 207 RG R5 02 99, p. 1 of 24, attached as Exhibit "A" to Complaint. The coverage is limited by the exclusions contained in the Liberty Insurance Contract, including the following relevant policy exclusion:

**2. Exclusions**

This insurance does not apply to:

. . .

    **j. Damage to Property**

        "Property damage" to:

        (1) Property you own, rent, or occupy;

        (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

        (3) Property loaned to you;

> (4) *Personal property in the care, custody or control of the insured;*
>
> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> . . .

*See* Liberty Insurance Contract, Form No. NRD 207 RG R5 02 99, p. 7 of 24 (emphasis added), attached as Exhibit A to the Complaint.

Liberty denied coverage for all damages alleged by Factory Mutual in this action in its denial letter of March 30, 2005, (attached as Exhibit "D" to the Complaint). Liberty specifically denied coverage for Factory Mutual's claim on the grounds that Intermet's claim sought only property damage to "personal property in the care, custody or control of the insured." *See* Complaint, Exhibit D, pp. 1, 2. Additionally, Liberty noted that Intermet had failed to provide timely notice of Factory Mutual's suit. *Id.* at p. 3. Moreover, Liberty expressly reserved its right to decline coverage based on other pertinent provisions in the Liberty Insurance Contract and applicable law. *Id*.

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure, provides, in relevant part:

> Every defense, in law or fact, to a claim for relief in any pleading…shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: …(6) failure to state a claim upon which relief can be granted.

When "ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must take all allegations in the complaint as admitted." *Morgan v. American Family Life Assur. Co. of Columbus*, 559 F. Supp. 477, 480 (W.D. Va. 1983). In reviewing the legal sufficiency of the Complaint, the Court should "construe the factual allocations in the light most favorable to the plaintiff." *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991). However, the court is "not 'so bound with respect to [the complaint's] legal conclusions. Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint.'" *Id.* (*quoting District 28, United Mine Workers, Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979)). "In addition to the facts on the face of the complaint, the court may also consider '… exhibits attached to the complaint.'" *Moore v. Flagstar Bank*, 6 F. Supp.2d 496, 500 (E.D. Va. 1997) (*citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure* § 1357 (1990); *see Anheuser-Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir. 1995), *cert. granted and judgment vacated on other grounds*, 517 U.S. 1206 (1996)); *Deward & Rich, Inc.,* 29 F. Supp. 777, 778 (W.D. Va. 1939) (allegations of complaint and the exhibits must be taken as true).

A court may dismiss the complaint "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984); *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (a court may grant a motion to dismiss for failure to state a claim if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim."); *Styles v. Liberty Mut. Fire Ins. Co.*, 2006 WL 1890104, at *1 (W.D. Va. 2006) (ibid).

## IV. CHOICE OF LAW

"In an action where jurisdiction in this court is based upon diversity of citizenship, [the] court must apply the substantive law of the forum state, including the choice of law rules." *Reiner v. Carilion Health Sys.*, 2006 WL 2009038 at *2 (W.D. Va. 2006) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1020 (1941)). The general rule in Virginia is that the interpretation of an insurance contract is governed by the law of the place where the policy was delivered. *See e.g. Woodson v. Celina Mut. Ins. Co.,* 211 Va. 423, 177 S.E. 2d 610, 613 (Va. 1970). However, as recognized by the United States District Court for the Western District of Virginia in *City Insurance Company v. Lynchburg Foundry Co.*, 1989 WL 1102787, at *2 (W.D. Va. 1989) (attached hereto as Exhibit 1)), "the Virginia General Assembly intended to alter the general rule regarding the interpretation of insurance contracts" by enacting Virginia Code § 38.2-313. Virginia Code § 38.2-313 requires that "[a]ll insurance contracts on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Va. Code Ann. § 38.2-313 (2006). In *Lynchburg Foundry*, this Court relied on § 38.2-313 and applied Virginia law to a coverage dispute involving the applicability of several policy exclusions in a general liability policy issued to Intermet outside of Virginia that provided coverage for an Intermet plant located in Virginia. *Lynchburg Foundry,* 1989 WL 1102787, at *1. In a case decided one year later, the United States District Court for the Western District of Virginia again relied upon Virginia Code section 38.2-313 and concluded that Virginia law applies to an insurance policy providing coverage to property in Virginia "because the place of performance of this insurance contract was Virginia." *See City of Lynchburg v.*

*Insurance Co. of Ireland, Ltd.*, 1990 WL 1232911, at *4 (W.D. Va. 1990) (attached hereto as Exhibit 2).

In this regard, the instant action is virtually identical to the *Lynchburg Foundry* case in that both cases involve a coverage dispute relating to the application of a policy exclusion, for a commercial liability policy issued to Intermet outside the Commonwealth of Virginia, with respect to its plant located in Virginia (i.e. the Radford, Virginia plant). Accordingly, pursuant to Virginia Code § 38.2-313 and in accordance with this Court's holding in the *Lynchburg Foundry* and *Insurance Co. of Ireland* cases, the Court should apply Virginia law to the coverage issues in this case. Importantly, the application of Virginia law to the instant coverage dispute is consistent with Virginia public policy.[5]

## V. STANDARD FOR INTERPRETATION OF INSURANCE POLICIES

Virginia courts construe insurance contract under the same rules that govern the interpretation of other contracts: " 'An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction.' " *Graphic Arts Mutual Ins. v. C.W. Warthen Co.,* 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990) (quoting *Hill v. State Farm Mutual Auto. Ins.,* 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989)); *see also Harleysville Mut. Ins. Co. v. Dollins*, 201 Va. 73, 77, 109 S.E.2d 405, 409 (1959) (ibid).

When the language in an insurance contract is clear and unambiguous, courts do not employ rules of construction, rather they give the language its plain and ordinary meaning. *Salzi*

---

[5] The enactment by the Virginia General Assembly of § 38.2-313 reflects the public policy of the Commonwealth of Virginia as the Supreme Court of Virginia has acknowledged that "all Virginia statutes reflect public policy to some extent, since otherwise they presumably would not have been enacted by the legislature." *City of Virginia Beach v. Harris*, 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000).

*v. Virginia Farm Bureau Ins. Co.,* 263 Va. 52,56, 556 S.E.2d 758 (2002); *Partnership Umbrella, Inc. v. Federal Ins. C*o., 260 Va. 123, 133, 530 S.E.2d 154, 160 (2000); *Floyd v. Northern Neck Ins. Co.,* 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993).

The words used in an insurance contract are given their ordinary and customary meaning when they are susceptible to such construction. *Salzi, supra,* 263 Va. at 56, 556 S.E.2d 758; *Hill*, 237 Va. at 152, 375 S.E.2d at 729 (1989).

VI.  ARGUMENT

   A.  **Plaintiff's Claims Against Liberty Should Be Dismissed Because They Are Excluded By The Plain Language of the Care, Custody or Control Exclusion Contained in the Liberty Insurance Contract.**

      1.  **Virginia courts uphold "care, custody or control" language in commercial general liability insurance contracts.**

One Virginia circuit court and one federal district court have addressed similar language in the insurance context. For example, in *Bowles v. Consolidated American Ins. Co.,* 11 Va. Cir. 146 (Va. Cir. Ct. 1988), the court addressed a "care, custody or control" provision in a property insurance contract. In *Bowles,* the insurance contract at issue provided coverage for "personal property belonging to others in the care, custody, or control of the insured, while (1) in or on the buildings, or (2) in the open (including with vehicles) on or within 100 feet of the designated premises."[6] Plaintiff, the owner of an auto parts company, sought coverage under a multi-peril policy after tub and shower enclosures he personally owned were damaged by a fire while they were on the property owned by the auto parts company. Only the auto parts company, and not the individual owner, was an insured under the insurance contract. In determining whether the

---

[6] The situation in *Bowles* is the reverse of the situation at issue in the instant case. The Liberty Insurance Contract excludes coverage for personal property in the care, custody or control of the insured.

insurance contract provided coverage under the care, custody or control provision, the court noted that "custody of things means to have them in charge – safekeeping … [i]t implies temporary physical control merely and does not connote domination, or supremacy or authority as does possession in its full significance." *Id. citing Aetna Ins. Co. v. Kaplan,* 206 Va. 1, 3, 141 S.E. 2d 725 (1965). The court ultimately concluded that the property was in the care, custody or control of the insured. *Id.* at 3. However, the court entered judgment for the insurer because the owner failed to satisfy his burden of establishing a loss. *Id.* at 3-5.

In a federal case decided by the United States District Court for the Eastern District of Virginia, the insured participated with the Army Corps of Engineers to increase water quality in several bays by increasing the tidal flow between the bays. *City of Virginia Beach v. Aetna Casualty and Surety Co.,* 426 F. Supp. 821 (E.D. Va. 1976). The insured obtained an easement from abutting landowners to enter and remove parts of their land for the purposes of enlarging or deepening the canal channel and repairing bulkheading. *Id.* at 824. The insured then transferred its rights to the Army Corps of Engineers. *Id.* The dredging unexpectedly caused damage to the abutting landowners' land and timber bulkheads while also resulting in erosion of their land. *Id.* The landowners filed suit against the insured and the insured sought coverage from the defendant insurer. The defendant denied coverage, in part, based upon the care, custody or control exclusion in the insurance contract. *Id.* at 825. The court concluded that the exclusion applied to preclude coverage for the damaged bulkheads because the insured had a duty to exercise care, custody or physical control over the bulkheads pursuant to its obligations to maintain, repair or reconstruct the bulkheads under the easement agreement. *Id*. at 826. *Cf. Bituminous Casualty Corp. v. Sheets,* 239 Va. 332, 389 S.E.2d 695 (1990) (holding that evidence did not support finding that care, custody and control exclusion applied).

These two Virginia cases demonstrate that Virginia courts have and will continue to enforce the plain language of care, custody or control provisions contained in insurance contracts to claims for damage to personal property in Virginia.

### 2. Plaintiffs' Claims Are Excluded Under the Liberty Insurance Contract By Virtue Of the Care, Custody or Control Exclusion

It is important to note that Factory Mutual wears two hats in this litigation. First, it is the assignee of Intermet in this Action. Originally, though, Factory Mutual was the subrogee of its own insured, American Axle, in the Underlying Action that Factory Mutual settled with Intermet. Factory Mutual's Complaint in the present Action, which incorporates its original subrogation action below, alleges only property damage sustained to personal property of American Axle, Factory Mutual's insured, which was located on Intermet's property and which was admittedly in the "care, custody or control" of Intermet at the time of loss.

For example, Factory Mutual alleges that "the explosion damaged the property of American Axle which was *on site* and in the *possession of Intermet* and being used by Intermet to manufacture the product to satisfy the terms of the contract between Intermet and American Axle.…" Complaint at Count I (¶ 50) (emphasis added). Factory Mutual similarly contends that "the alleged damages included damage to the property of American Axle being used by and in the *possession* of Intermet on site for the manufacture and production of its product." *Id.* at Count I (¶ 54)(emphasis added); *see also id.,* Count III (¶ 47)("the explosion…damaged the American Axle castings in the *possession* of Intermet and on site being used in the manufacture and production of product …") (emphasis added).

Plaintiff further alleges that the explosion damaged products and merchandise on the Intermet site being produced pursuant to a contract between Intermet and American Axle. For

- 13 –

___
Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

example, Plaintiff asserts that "the explosion damaged the actual product and merchandise that was to be shipped to American Axle to satisfy the terms of their contract*.*" *Id.* at Count I (¶ 42). Similarly, Plaintiff contends that the alleged damages were incurred to "property being manufactured and produced by Intermet for their customer, American Axle." *Id.* at Count I (¶ 53); s*ee also id.* at Count I (¶ 49) ("the explosion damaged the property being manufactured by Intermet…").

As demonstrated by these allegations, Plaintiff's claims for damages as the subrogor of American Axle, involve property damage either to American Axle's equipment and castings in the *possession of Intermet* or to the merchandise and product being manufactured for American Axle that was located *within* the Intermet plant which exploded. Thus, the allegations, individually and collectively, demonstrate that Factory Mutual seeks to recover solely for damage to American Axle's property that was within the care, custody or control of Intermet.

Indeed, the phrase "possession of Intermet" confirms that the damaged property was in the care, custody or control of Intermet at the time of the explosion and subsequent fire. Moreover, the allegations of the Complaint (as well as the Underlying Complaint) indicate that the damage to the merchandise and products took place within the Intermet plant and, as a result, the damaged property was in the care, custody or control of Intermet at the time of the explosion and fire.

As noted above, the Liberty Insurance Contract specifically excludes coverage for property damage to "personal property in the care, custody or control of the Insured." *See* Liberty Insurance Contract, Exhibit A to Complaint, Form NRD 207 RG R5 02 99, pp. 5-6.

In commenting on the application of the "care, custody, or control" exclusions in commercial general liability insurance contracts, one insurance treatise has emphasized that:

> The 'care, custody, and control' exclusion, as it is commonly known, is intended to prevent the general liability insurance from becoming tantamount to property insurance when property is in the hands of a bailee or lessee, or is otherwise in the custody or control of a named insured and therefore subject to damage or loss due to the named insured's own acts or omissions.

Eric Mills Holmes, *Holmes' Appleman on Insurance 2d*, § 132.9 (2002).

The Liberty Insurance Contract is a liability insurance policy, not a property insurance policy,[7] and the plain language set forth in the "care, custody, and control" exclusion precludes coverage for precisely the type of damage for which Factory Mutual is seeking to recover from Liberty (i.e. personal property of third parties that is in the possession of the insured at the time damage is sustained). Based upon the allegations in the Complaint, Factory Mutual is seeking to recover solely for damages to personal property in the care, custody or control of Intermet. Thus, the Plaintiff's claims fall squarely within the "care, custody, or control" exclusion of the Liberty Insurance Contract and, as such, "it is clear that no relief could be granted [with respect to Liberty] under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232. Accordingly, Liberty respectfully requests that the Court dismiss with prejudice the Plaintiff's claims against Liberty.

### B. Liberty Had No Duty To Defend Intermet in the Underlying Action Because Factory Mutual's August 2003 Complaint Did Not Allege Any Covered Losses.

In Virginia, an Insurer's duty to defend arises only when the facts alleged in the "four corners" of the Underlying Complaint, which, if proved, would fall within the coverages provided under the "four corners" of the Insurance Contract. When an insurer would not be liable for coverage under any characterization of the allegations of the Complaint, there is no obligation to

---
[7] In this regard, Plaintiff acknowledges that Intermet had separate property coverage in place with Co-Defendant Zurich American that insured property "built, installed, serviced or sold by the insured, until completed and accepted by the Insured's customer …" *See* complaint at Count V (¶ 34).

provide a defense to the insured. *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (Va. 1978).

Thus, where the Complaint fails to allege any facts that would give rise to a covered loss, even if all those facts are true, the insurance company has no duty to defend its insured. *See Erie Ins. Exchange v. State Farm Mut. Auto Ins. Co.,* 60 Va. Cir. 418 (Warren County, Dec. 16, 2002) ("To determine whether an insurer has a duty to defend, a court applies the 'eight corners rule' (four corners of the policy and four corners of the complaint) and looks solely at the policy language to ascertain the terms of the coverage and at the allegations in the underlying action to determine whether any claims alleged therein are covered by the policy.")

Factory Mutual's August 2003 Complaint against Intermet failed to allege any facts that would give rise to coverage for Intermet under the Liberty Insurance Contract. Accordingly, Liberty had no duty to defend Intermet in the underlying action.

### C. The Declaratory Judgment Action in Count II of the Complaint Should Be Dismissed Because There Is No Case Or Controversy.

Factory Mutual's request for declaratory judgment with respect to Liberty should be dismissed because no actual, justiciable controversy exists between Plaintiff and Liberty. Federal courts recognize that "it is fundamental to the exercise of judicial powers that a genuine case and controversy be before a court" and that "the absence of a justiciable controversy will result in dismissal." *North Jefferson Square Assocs., L.P. v. Virginia Housing Development Authority*, 94 F. Supp. 2d 709, 714 (4th Cir. 2000). Moreover, under the federal declaratory judgment statute, declaratory relief is available only "in a case of actual controversy within [the court's] jurisdiction." *See* 28 U.S.C. § 2201. An "actual controversy" exists when the dispute is "definite and concrete, touching the legal relations of the parties having adverse legal interests."

*White v. National Union Fire Ins. Co*., 913 F.2d 165, 167 (4th Cir. 1990). Thus, declaratory relief is intended to resolve real, not hypothetical controversies, "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S. Ct. 956 (1969).

No "actual controversy" exists with respect to Liberty's duties under the Liberty Insurance Contract; the plain language of the Liberty Insurance Contract excludes coverage for all of Factory Mutual's claims. Factory Mutual cannot create a judiciable controversy simply by bringing an action alleging such a controversy. *Cf. Erie Insurance Group v. Hughes,* 240 Va. 165, 170, 393 S.E.2d 210, 212 (1990) (holding that declaratory judgment actions are not proper under analogous Virginia Declaratory Judgment Act, Va, Code Ann. Section 8.01-184, just because parties disagree; enactment of declaratory judgment act did not vest courts with authority to decide moot questions).

Factory Mutual attempts to invoke this Court's jurisdiction under the federal Declaratory Judgment Act with respect to a moot question. The Liberty Insurance Contract, like any other commercial general liability insurance contract, was not designed to provide property insurance coverages. No coverage exists for Plaintiff Factory Mutual's claims against Liberty, even if all Factory Mutual's allegations are taken as true. Accordingly, Liberty requests that this Court dismiss Count II of Factory Mutual's Complaint with prejudice.

## VII. CONCLUSION

For the foregoing reasons, Liberty respectfully requests that the Court grant the following relief:

1. Grant Liberty Mutual Insurance Company's Motion to Dismiss all counts in the Complaint with prejudice on the Grounds that the Plaintiff Factory Mutual sued the wrong Defendant;

2. Grant Liberty's Motion to Dismiss Count I of the Complaint on the grounds that Plaintiff Factory Mutual has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

3. Grant Liberty's Motion to Dismiss Count II of the Complaint on the grounds that no justiciable controversy exists between Liberty and Factory Mutual;

4. Alternatively, Liberty requests that this Court declare, in response to Count II of the Complaint, that Liberty Mutual Fire Insurance Company had no obligation under the Liberty Insurance Contract to defend or indemnify Factory Mutual's assignor, Intermet Corporation and/or Intermet International, for the claims alleged in Factory Mutual's underlying Complaint in Action No. 7:03CV00518, *Factory Mutual Ins. Co. v. Intermet International, Inc.,* in the United States District Court for the Western District of Virginia, Roanoke Division.

5. Grant such other relief that the Court deems mete and proper.

Done this 13th Day of October, 2006.

>Respectfully submitted,
>LIBERTY MUTUAL INSURANCE COMPANY
>LIBERTY MUTUAL FIRE INSURANCE COMPANY

>/s/ Robert Tayloe Ross

>By Counsel

MIDKIFF, MUNCIE & ROSS, P.C.
Robert Tayloe Ross (VSB No. 29614)
Robert S. Reverski, Jr. (VSB No. 42383)
MIDKIFF, MUNCIE AND ROSS, P.C.
9030 Stony Point Parkway, Suite 160
Richmond, Virginia  23235
(804) 560-9600 - Telephone
(804) 560-5997 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

>Stuart M. Brody, Esq.
>William J. Sneckenburg, Esq.
>Sneckenberg, Thompson & Brody, LLP
>161 North Clark Street
>Suite 3575
>Chicago, Illinois  60601
>(312) 782-9320

>James C. Turk, Jr., Esq.
>Stone, Harrison, and Turk
>1007 E. Main Street
>P.O. Box 2968
>Radford, VA  24141/24143-2968
>Phone: (540) 639-9056
>Fax: (540) 731-4665

>/s/ Robert  Tayloe Ross