IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT
OF VIRGINIA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY as assignee of INTERMET INTERNATIONAL, INC. and INTERMET CORPORATION d/b/a Intermet New River Foundry and d/b/a Intermet Radford Foundry d/b/a New River Castings, <br><br>Plaintiff, <br><br>v. <br><br>LIBERTY MUTUAL FIRE INSURANCE CO., NATIONAL UNION FIRE INSURANCE And COMPANY OF PITTSBURGH, PA, <br><br>Defendants. | Case No. 7:06-CV-00462 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
LIBERTY MUTUAL FIRE INSURANCE COMPANY's MOTION TO DISMISS
AND NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA's MOTION TO DISMISS**

**I. Summary of Argument**

The Defendants, Liberty Mutual Fire Insurance Company and National Union Fire Insurance of Pittsburgh, PA, have each filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging "all" of the damages alleged by Factory Mutual (FM) are excluded by the plain language of the policies (Defendant Liberty's Motion to Dismiss, pg. 2). Simple examination of the underlying Complaint, which was filed pursuant to the federal court's notice pleading standards, reveals Defendant's clear error in restricting the broad allegations made by FM.

The Plaintiff has filed a single response which addresses the arguments raised in both Motions. Since Plaintiff's Declaratory Judgment Complaint prays for more than $2,000,000 in damages, which is in excess of the $1,000,000 policy limits contained in the Liberty Mutual's

Commercial General Liability Policy (Exhibit A, attached to Declaratory Judgment Complaint), the allegations trigger the National Union Fire Insurance Company of Pittsburgh, P.A. Commercial Umbrella Policy. (Exhibit B, attached to Declaratory Judgment Complaint).

Both Defendants improperly analyze any duty to defend as potentially arising out of the Complaint filed in the instant matter. However, it is undisputed that the correct analysis involves a broad view of whether the <u>underlying</u> complaint in the case of <u>Factory Mutual Insurance v. Intermet International, Inc</u>., Case No.: 7:03cv518, might contain allegations which triggers the duty to defend. (emphasis added).

The insurance policy at issue was made and delivered in Detroit, Michigan. The policy insured Intermet facilities throughout the United States. Virginia law dictates this Court apply Michigan law, since the global insurance policy was made and delivered in Michigan.

Applying Michigan law, the care, custody and control exclusionary clause contained in the relevant policies are "inherently ambiguous." Since issues of fact remain regarding the numerous types of damage which are covered under the policies, the pending 12(b)(6) Motions are inappropriate challenges to disputed factual matters. Accordingly, Defendants' Motions to Dismiss should be denied.

## II. <u>Factual Background and Procedural History</u>.

This case arises from the March 5, 2000 explosion and subsequent fire at the Intermet New River Castings facility and Foundry in Radford, Virginia (Underlying Complaint, Attached hereto as Exhibit F). The underlying lawsuit was filed with this Court in the United States District Court for the Western District of Virginia on August 12, 2003 (Exhibit F). The suit is entitled <u>Factory Mutual ("FM") a/s/o American Axle v. Intermet</u>. FM sued Intermet for breach of contract **and** negligence in an amount in excess of $2,000,0000 (Exhibit F, ¶¶6, 8). After Intermet filed for bankruptcy, the

underlying action was stayed, and Intermet assigned its rights in the insurance claims to FM. FM filed this action seeking a declaratory judgment in favor of coverage of the claims.

The underlying lawsuit alleges distinct theories of liability, coverage and damages which include, inter alia, the property of American Axle ***being used*** by Intermet in its manufacturing process, the business losses of American Axle, and the consequential damages sustained by American Axle. The underlying lawsuit includes causes of action for breach of contract **and** negligence, and refers to damages generally. (Exhibit F, Count I ¶22, Count II, ¶21). Reference is made generally that "extensive damages resulted, including damage to the bailed property of American Axle." (Exhibit F, Count II, ¶21). The damages referred to by the term "extensive damages" in the underlying Complaint include:

1. Recovery of Lost Production;
2. Loss of Income on Loss of Sales;
3. Additional Freight;
4. Tooling Related Costs;
5. Outsourcing Cost;
6. Travel and Salaried Cost;
7. Engineering and Testing;
8. Recovery;
9. Tech Center Payroll;
10. Outsourcing Payroll;
11. Claim Documentation;
12. Claim Preparation; and

13. Continuing Extra Caps

(Exhibit G, attached hereto)

The Defendants have simply ignored the damages which make up "extensive damages" contained in the underlying complaint. Thus, the Defendant breached the subject insurance contract when it failed to provide a defense for the underlying lawsuit since those damages could or might have been covered by the Defendants' policies.

**II.     Federal Rule of Civil Procedure 12(b)(6) Standards**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings, but it does not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The issue is not whether plaintiff will ultimately prevail on its claims, but whether it is entitled to offer evidence to support the claims. Revene v. Charles County Comm'rs, 882 F.2d 870, 882 (4th Cir. 1989). Stated another way, it has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990).

"In assessing a Rule 12(b)(6) issue, we accept as true the factual allegations of the challenged complaint, see Zinermon v. Burch, 494 U.S. 113, 118, 108 L.Ed. 100, 110 S.Ct. 975 (1990), and we view those allegations in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L.Ed. 2d 90, 94 S.Ct. 1683 (1974)." Lambeth v. Bd. of Comm'rs, 477 F.3d 866 (4th Cir. 2005).

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded

allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Guang Lu v. Zurich Am. Ins. Co., 115 Fed. Appx. 613 (4th Cir. 2004); citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

A Court should only look within the four corners of the Plaintiff's Complaint in resolving a Rule 12(b)(6), unless documents are integral to and explicitly relied on in the complaint and the plaintiffs do not challenge its authenticity. Levinson v. Mass. Mut. Life Ins. Co., 2006 U.S. Dist. LEXIS 83397 (E.D. Va. 2006); citing Am. Chiropractic Ass'n v. Trigon Healthcare, Inc. 367 F.3d 212, 234 (4th Cir. 2004) (citing Phillips v. LCI Int'l, 190 F.3d 609, 618 (1999).

## ARGUMENT

### I. VIRGINIA APPLIES MICHIGAN LAW WHERE AN INSURANCE POLICY IS DELIVERED IN MICHIGAN.

The Virginia Supreme Court recently revisited and confirmed its well settled choice of law principle, "….the law of the place where the contract was formed applies when interpreting the contract and determining its nature and validity." Dreher v. Budget Rent-A-Car System, Inc., 272 Va. 390, 395, 634 S.E.2d 324, 327 (2006); citing Woodson v. Celina Mutual Ins. Co., 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970) and Buchanan v. Doe, 246 Va. 67, 70, 431 S.E.2d 289, 291 (1993). The principles reaffirmed in Dreher are longstanding and are uniformly followed in Virginia and the Fourth Circuit. Lexie v. State Farm Mut. Auto Ins. Co., 251 Va. 390, 394, 469 S.E.2d 61, 63 (1996); Straight Creek Processing Co. v. Lawyers Title Ins. Corp., 76 F.3d 375 (4th Cir. 1996); May Partnership v. Barker, 246 Va. 61, 64, 431 S.E.2d 331, 333 (1993).

In analyzing where the contract was formed or what type of action exists, the law of the Commonwealth [or forum state] is applied to determine the nature of the disagreement. Dreher,

supra, 272 Va. at 398. (Applying Virginia law solely to determine if underlying action involved tort or contract).

Under Virginia law, a contract is made when the last act necessary to complete the contract is performed, and, in the context of an insurance policy, the last act is the delivery of the policy to the insured. Women in Military Service v. Hartford Fire Ins. Co., 21 Fed.Appx. 186, 191 (4th Cir. 2001); citing Metcalfe Bros., Inc. v. Am. Mut. Liab. Ins. Co. 484 Supp. 826, 829 (W.D. 1980); see also Buchanan v. Doe, 246 Va. 67, 431 S.E.2d 289, 191 (Va. 1993).

The insurance policy issued by Liberty Mutual Fire Insurance Company (Liberty Mutual) was delivered to the insured, Intermet Corporation, at 5445 Corporate Drive, Suite 200, Troy, MI and insured "all named operations of the insured." (Liberty Mutual Declarations Page, Attached Exhibit A to Plaintiff's Declaratory Judgment Complaint). The insurance policy issued by National Union Fire Insurance Company of Pittsburgh, PA (National Union), was also delivered to the insured in Michigan at the identical address. (National Union Declarations Page, Attached Exhibit B to Plaintiff's Declaratory Judgment Complaint). It is clear the policies at issue were delivered in Michigan, and therefore Michigan law applies.

However, seeking to apply Virginia law to the contracts formed and delivered in Michigan, the Defendants cite to Va. Code §38.2-313 and unpublished federal court decisions, one from 1989 and one from 1990. The plain language of the statute reveals it is inapplicable. The two cited cases are easily distinguishable and do not support an application of Virginia law here.

First, the policies at issue are liability policies and are fall outside the limiting language of "ownership, maintenance, or use of the property" contained in §38.2-313. Next, the language of the statute does not indicate that "any contract which covers **any** property **in** the Commonwealth shall

be deemed made in the Commonwealth." (**emphasis added**) The Legislature could have used language to cover any property in Virginia if in fact it wished to do so. However, by its own terms, the statute only applies to "insurance contracts on or with respect to the ownership, maintenance or use of property **in** this Commonwealth." (**emphasis added**)

Further evidence that the Plaintiff's interpretation is correct is the citation to the published version of §38.2-313. There, the case cited in the published statute, <u>National Indep. Coal Operators Ass'n v. Old Republic Ins. Co.</u>, 544 F.Supp.2d 520 (W.D. Va. 1982), follows the "where formed" rule articulated in the recent Virginia Supreme Court case of <u>Dreher v. Budget Rent-A-Car</u>, supra, cited by the Plaintiff. This further highlights the limited nature of the language contained in §38.2-313.

Defendants rely heavily on the unpublished case of <u>City Ins. Co. v. Lynchburg Foundry Co.</u>, 1989 U.S. Dist. Lexis 18205 at *2 (W.D. 1989). The Court determines that Virginia law applied, but further stated: "I am not aware of any decisions by Virginia Courts interpreting this statute, but it appears that the Virginia General Assembly intended to alter the general rule regarding interpretation of insurance contracts." Id. Also, the Court gave no analysis of the longstanding application of the "where formed" rule. See <u>Woodson v. Celina Mut. Ins. Co.</u>, 211 Va. 423, 177 S.E.2d 610.

However, before and after <u>City Ins. Co.</u>, the Virginia Courts have not applied §38.2-313 to mandate that Virginia law apply to any insurance contracts where **any** property is located in Virginia. Rather, the Virginia Courts, and the 4th Circuit, have continued to follow the rule restated by the Virginia Supreme Court in <u>Dreher</u> and <u>Buchanan</u>, supra. To Plaintiff's knowledge, no Virginia state Court and no published opinion of any court, has ever applied §38.2-313 as

7

Defendants argue.

The next unpublished case cited by the Defendants, <u>Lynchburg v. Insurance Co. of Ireland, Ltd</u>, 1990 U.S. Dist. LEXIS 19832 at *4, (W.D. Va 1990), involved no choice of law dispute. The Court simply cited to Va. Code §38.2-313 indicating it was going to apply Virginia law. This case, and <u>City Ins. Co.</u> carry no weight in allowing the disregard of the rule in <u>Dreher</u> and <u>Buchanan</u>, which are well settled Virginia law.

The insurance contracts were delivered in Michigan, formed in Michigan, and Michigan law applies to the substantive law in this action.

## II. THE ALLEGATIONS IN THE UNDERLYING COMPLAINT TRIGGER THE DEFENDANTS' DUTY TO DEFEND, WHICH THEY HAVE REFUSED TO HONOR

Both Defendants have a duty to defend which is apparent from the allegations plead in the underlying Complaint.[1] The underlying complaint refers to "extensive damages" and both insurers summarily refused to defend their insured with no information regarding the various damages claimed.

National Union's claims that Plaintiff has failed to exhaust their remedies through the Liberty Mutual policy to trigger coverage of its umbrella policy. However, the duty to defend was triggered by Plaintiff's claim of more than $2,000,000 in damages, thereby, exceeding the $1,000,000 policy limits in the Liberty Mutual policy.

Under Michigan law, the insurer's duty to defend is broad and expansive. An insurer has the duty to defend if the allegations of the underlying complaint arguably fall within the coverage of the

---

[1] The Declaratory Judgment Complaint and attachments contain the citations to the Policies and each duty to defend. (Dec. Complaint, Count I, ¶¶46-48, Count III ¶43)

8

policy. Bristol West Ins. Co. v. Whitt, 406 F.Supp.2d 771, 780 (D. Mich. 2005). Because an insurer has a duty to defend whenever coverage is arguable, it is often said that the duty to defend is broader than the duty to indemnify. Bristol West Ins. Co. v. Whitt, 406 F.Supp.2d 771, 780 (D. Mich. 2005). This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably or potentially* come within the policy coverage. Id. An insurer also has a duty to defend, despite other theories of liability asserted against the insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. Dochod v Central Mutual Ins Co., 81 Mich.App. 63; 264 N.W.2d 122 (1978); Smirch v. Auto Club Group Ins. Co., 179 Mich.App. 125, 128 (Mich. Ct. App. 1989). The duty to defend cannot be limited by the precise language of the pleadings. The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. Shepard Marine Construction Co v Maryland Casualty Co., 73 Mich.App. 62; 250 N.W.2d 541 (1976). If there is any doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. Detroit Edison Co. v. Michigan Mut. Ins. Co., 102 Mich.App. 136, 142 (Mich. Ct. App. 1980).

Additionally, under Michigan law, the allegations of the underlying complaint, not the insured's version of the events, should frame the insurer's duty to defend. Bristol West Ins. Co. v. Whitt, 406 F.Supp.2d 771, 781 (D. Mich. 2005). The insurer also has the duty to evaluate the underlying complaint and the tender of defense for possible coverage, and resolve any doubt of coverage in favor of the insured. Oscar W. Larson Co. v. United Capitol Ins. Co., 845 F.Supp. 458 (W.D.Mich. 1993).

The relaxed threshold which triggers the "duty to defend" in the underlying complaint is

9

analyzed in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief."

In examining the underlying Complaint, the Plaintiff has clearly provided a short and plain statement which could arguably entitle it to some coverage pursuant to the policies. The underlying Complaint includes causes of action for breach of contract **and** negligence, and refers to damages generally. (Exhibit F, Count I ¶22, Count II, ¶21). Reference is made generally that "extensive damages resulted, including damage to the bailed property of American Axle." (Exhibit F, Count II, ¶21). Contrary to Defendants' assertions, this could include many types of damages, many of which were sustained in this fire.

Defendants simply assume that "extensive damages" can be precisely defined as falling within a particular exclusion. This assumption began with the denial of the initial claims (Exhibit D, Exhibit E), and has continued through the briefing stage of these Motions. The Plaintiff has not identified its damages in the underlying Complaint in detail which could allow the Defendants to make any conclusions regarding their make up. Additionally, the Defendants have never requested that the Plaintiff detail its damages with any specificity.

Even if the Court should determine that Virginia law applies, Virginia and Michigan concur that the duty to defend is to be interpreted broadly in favor of the insured:

> In construing an insurance policy, the Virginia courts follow a combination of the exclusive pleading rule and the potentiality rule. The former provides that the duty to defend is determined solely by the claims asserted in the pleadings, and the latter provides that the duty to defend is triggered if there is any "potentiality" that the allegations could state a claim covered by the policy. An insurer is relieved of the

10

duty to defend only when it clearly appears from the initial pleading the insurer would not be liable under the policy contract for any judgment based on the allegations. All insuring provisions are construed broadly and any ambiguity is construed in favor of the insured, and strictly against the insured.

Northern Virginia Funeral Choices, Inc. v. Erie Ins. Co., 61 Va. Cir. 352, (2003); citing Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100 (1990); and Reisen v. Aetna Life and Casualty Co., 225 Va. 327, 302 S.E.2d 529 (1983).

The facts as alleged by the underlying Complaint show there is more than a potentiality that certain damages fall outside the "care, custody, and control" exclusion. The mere potentiality of covered damages triggered the Defendants duty to defend. They have breached that duty.

The fact that the Defendants have breached their duty to defend also correlates that coverage may exist for certain categories of Plaintiff's damages. Without further discovery, and Plaintiff having an opportunity to present evidence on this issue, dismissing this matter on the pleadings at the 12(b)(6) stage is inappropriate.

## III. THE "CARE, CUSTODY, AND CONTROL EXCLUSION IS INHERENTLY AMBIGUOUS AND ISSUES OF FACT EXIST MANDATING DENIAL OF THE PENDING 12(b)(6) MOTIONS.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the pleadings, but it does not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The issue is not whether plaintiff will ultimately prevail on its claims, but whether it is entitled to offer evidence to support the claims. Revene v. Charles County Comm'rs, 882 F.2d 870, 882 (4th Cir. 1989).

"[A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded

allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Guang Lu v. Zurich Am. Ins. Co., 115 Fed. Appx. 613 (4th Cir. 2004); citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Conley v. Gibson, 355 U.S. 41, 47, 2 L.Ed. 80 (1957). Rather, Rule (a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." See Hatfield v. New York Times, Co., 416 F.3d 320 (4th Cir. 2005) (Reversing district courts dismissal based on 12(b)(6) Motion and noting liberal notice pleading standard under Rule 8(a)(2)).

Here, the Defendants attempt to overly restrict their review to solely the Declaratory Judgment Complaint. However, the underlying Complaint must be analyzed to determine if there are any facts which may cause coverage to exist outside the "care, custody, or control" exclusionary clause. (Exhibit F). Again, there are sufficient facts alleged in the underlying complaint, including "extensive damages" which create an issue of fact regarding whether or not the damages can be neatly placed into one category, or whether the damages belong to several different classifications, some, or many of which, are covered under the Policies. (Exhibit F, Count I ¶22, Count II, ¶21).

Both policies cover "property damage." However, they exclude "personal property in the care, custody or control of the Insured." (Complaint, Exhibit B, pg. 7; Complaint, Exhibit A, pg. 7). Of critical importance is that neither policy defines "personal." Simple construction of the policy would indicate that "personal property" is a subset of "property damage." With no definition of "personal property," an ambiguity exists. At worst for Plaintiff, "personal property" implies some

tangible good. A clear factual issue exists regarding how to interpret this ambiguity and whether or not the Plaintiff's claimed damages listed as Nos. 1-13 (Exhibit G) are personal property.

Michigan courts have indicated that the "care, custody or control" exclusion is inherently ambiguous and a question of fact, not law:

> We agree that the clause is ambiguous. In support, we point out that many different courts, in interpreting this clause, have applied many different tests and come to many different conclusions, and have seemingly always based their determinations on an interpretation of the facts of the particular case.

Arrigo's Fleet Service, Inc. v. Aetna Life & Casualty Co, 54 Mich. App. 482, 492; 221 N.W.2d 206 (1974). The clause is inherently ambiguous and thus is to be strictly construed against the insurer; Northwestern Nat'l Ins. Co. v. Pennington Bros., Inc., 55 Mich. App. 66 (Mich. Ct. App. 1974).

In Reeder v. Nationwide Mut. Fire Ins. Co., 419 F. Supp. 2d 750 (D.Md. 2006), the district court in the Fourth Circuit denied Nationwide Mutual Fire Insurance Company's Rule 12(b)(6) Motion to Dismiss finding that plaintiff had not been presented with the opportunity to present evidence in support of its claim.

As in Reeder, the Plaintiff has had no opportunity to present evidence regarding its claimed damages which fall outside the exclusionary clause. Without any evidence before the Court, it would be impossible to determine as a matter of law that no damages are covered under the Policies. Of further example, there is no evidence of whether or not the damages claimed were necessary to Intermet's work, or merely incidental. See Bigelow-Liptak Corp. v. Continental Ins. Co., 417 F.Supp.2d 1276 (1976) (necessary or incidental relationship of property is factor in determining whether care, custody or control applies). There is no evidence of whether or not the property was a

fixture. See Cincinnati Ins. Co. v. Fed. Ins. Co., 166 F. Supp. 2d 1172 (E.D.Mich. 2001) ("fixture" does not fall under care, custody and control exclusion). Numerous fact questions remain preventing resolution on the face of the pleadings at this stage.

Even if the Court should apply Virginia law under the "care, custody, or control" analysis, Plaintiff submits this Court should reach the same result as it would if applying Michigan law.

Defendant requests to summarily label all of the different types of damages (Exhibit G) as falling within the "care, custody and control" exclusion at the 12(b)(6) stage is premature and improper. Defendants' Motions should be denied.

## CONCLUSION

WHEREFORE, the Plaintiff hereby requests this Court apply Michigan law to the pending 12(b)(6) Motions, find that the Defendants each breached its duty to defend, and find that fact questions remain before the relevant damages can be identified as falling inside or outside the "care, custody, or control" exclusionary clauses.

The care, custody or control exclusionary clauses are inherently ambiguous and fact questions remain regarding the definition of "personal property." As the term remains undefined in the policies, and there are intangible damages which are clearly not "personal property," Defendants Motion is without merit.

Defendants pending 12(b)(6) Motions address issues which contain fact questions which the Plaintiff is entitled to develop and present to this Court. Plaintiff respectfully requests that Defendants' Motions be denied.

Respectfully Submitted,

S/ William J. Sneckenberg
Stuart M. Brody, Esq.
William J. Sneckenberg, Esq.
SNECKENBERG, THOMPSON & BRODY, LLP
161 North Clark Street, Suite 3575
Chicago, Illinois 60601
Fax No. (312) 782-3787
Phone No. (312)782-9320

and

James C. Turk, Jr., Esq.
Stone, Harrison, and Turk
1007 E. Main Street
P.O. Box 2968
Radford, VA 24141/24143-2968
Phone No. (540) 639-9056
Fax No. (540) 731-4665

## CERTIFICATE OF SERVICE

The undersigned, an Attorney, hereby certifies that on January 10, 2007, he caused the foregoing to be filed electronically through the CM/ECF system to the following counsel or parties of record. All counsel of record who did not receive notice by way of CM/ECF were sent a copy of the foregoing through U.S. Mail, postage prepaid, on the date identified hereinabove.

Richard W. Bryan
Christopher P. Ferragamo
1120 20th Street, N.W.
Suite 300 South
Washington, D.C. 20036

Robert Taylor Ross
Midkiff, Muncie & Ross, P.C.
9030 Stony Point Parkway, Suite 160
Richmond, VA 23235

S/MATTHEW L. MCBRIDE