IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LIBERTY MUTUAL INSURANCE COMPANY, ) <br> et al., ) <br> ) <br> Defendants. ) | No. 7:06-cv-00462 <br> Judge Glen E. Conrad |

### REPLY OF DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, TO PLAINTIFF'S OPPOSITION TO NATIONAL UNION'S MOTION TO DISMISS

Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), states the following in reply to the Opposition of Plaintiff Factory Mutual Insurance Company ("Factory Mutual" or "Plaintiff") to National Union's Motion to Dismiss.

In its opposition Plaintiff seeks to distance itself from the allegations of its Complaint, in which it repeatedly alleges that the damages it seeks flow from the property that was destroyed in the use and possession of defendants' insured, Intermet. Plaintiff's effort is unavailing as its belated recitation of "additional damages" (e.g. lost income, additional freight, etc.) beyond the cost of the damaged goods does nothing to overcome application of the coverage exclusion. All of the alleged damages, including those newly specified, flow from the destruction of property within the care, custody or control of Intermet. Simply put, all of the damages now sought by Plaintiff stem from the fact that property within Intermet's possession and control was destroyed causing a variety of alleged losses. No coverage for these damages is provided by the policies.

The Opposition also fails to support application of Michigan law, as opposed to Virginia law as required by Virginia Code § 38.2-313, and as construed by this Court in a similar case

involving a policy delivered to the same insured, Intermet, outside of the Commonwealth. Although Virginia law plainly applies, in the end, the care, custody or control exclusion under Michigan law and the facts here, yield the same outcome supporting the exclusion of coverage.

Further, Plaintiff endeavors to apply a "duty to defend" standard to National Union's alleged coverage obligation. Again, its efforts are misplaced. Plaintiff argues incorrectly that because the damages it seeks exceed the limit of the primary insurer, National Union, bears a duty to defend. Opposition at 8. Plaintiff ignores that the National Union policy contains a condition precedent to any duty to defend, namely exhaustion of primary limits. Here, as no such exhaustion has occurred, much less been alleged, Plaintiff fails to state an actionable claim. Moreover, where, as here, the policy excludes coverage for the damages alleged, no duty to defend arises.[1]

I.  **VIRGINIA LAW, NOT MICHIGAN LAW, APPLIES TO THE NATIONAL UNION POLICY AND, PURSUANT TO VIRGINIA LAW, THE PLAIN LANGUAGE OF THE EXCLUSION PRECLUDES COVERAGE**

In its Motion to Dismiss, National Union has relied upon Virginia Code § 38.2-313 in asserting that Virginia law applies to the coverage issues in this case. Further, National Union cited to two decisions issued by *this Court* concluding, based upon § 38.2-313, that Virginia law applied to the interpretation of general liability policies issued to insureds located outside of Virginia. In addition, National Union noted that *this Court* recognized in Lynchburg Foundry that, in enacting § 38.2-313, the General Assembly intended to alter the general *lex loci contractus* rule regarding the interpretation of insurance contracts.[2] Plaintiff makes two

---

[1]   In addition, as exemplified in Plaintiff's Exhibit G, Plaintiff seeks to recover the damages that it and/or its assignee allegedly sustained as a result of the explosion at the Intermet facility in Virginia. None of the damages constitutes defense costs. The duty to defend standard, therefore, has no place in determining National Union's Motion to Dismiss.

[2]   Notably, Lynchburg Foundry involved the interpretation of a general liability policy issued to Intermet, the same insured at issue in this case.

2

arguments in its Opposition as to why the Court should not rely upon § 38.2-313 to conclude that Virginia law applies to the coverage issues in this case. Neither argument, however, is persuasive.

First, Plaintiff's argument rests upon its unreasonably narrow interpretation of the statute and unfounded belief that had the General Assembly intended the statute to apply to liability policies, it could have used the word "any" rather than "with respect to" in describing the application of the statute. Notwithstanding Plaintiff's belief, the statutory phrase <u>"with respect to the ownership, maintenance or use of property in this Commonwealth"</u> is as broad as the phrase "any" and thus, the statute as drafted readily applies to general liability policies and their application to property maintained, used and damaged in Virginia. Indeed, Plaintiff has stated numerous times in its Complaint and in its underlying Complaint that the National Union policy provides coverage for property damage to property in Virginia (i.e. damage to American Axle products and American Axle equipment located at the Intermet plant in Radford, Virginia) and that it seeks relief here based upon such coverage. Thus, by its very allegations Plaintiff has brought the National Union policy squarely within the application of the statute.

Second, Plaintiff argues that the Virginia choice of law statute should not apply because subsequent to the enactment of the statute some courts have applied a general choice of law rule rather than the statute. Plaintiff's attempt to write the statute out of the Virginia Code, however, is without merit. The mere fact that Virginia state courts have not addressed every application of the statute does not and should not preclude this Court from applying the statute here. Indeed, while defendants cite decisions of this Court applying § 38.2-313 in the manner urged here, Plaintiff is unable to cite any case holding that § 38.2-313 does not apply where the alleged damages flow, as here, from property maintained, used and damaged in Virginia. Accordingly,

National Union submits that pursuant to § 38.2-313, and in accordance with this Court's holding in <u>Lynchburg Foundry</u> and <u>Insurance Co. of Ireland</u>, this Court should also apply Virginia law to the coverage issues in this case. As discussed in National Union's Motion, the care, custody or control exclusion under Virginia law bars coverage for Plaintiff's damages.

II. **EVEN ASSUMING, *ARGUENDO*, THAT VIRGINIA CODE § 38.2-313 DOES NOT SUPPORT APPLICATION OF VIRGINIA LAW TO PROPERTY MAINTAINED, USED AND DAMAGED IN VIRGINIA, PLAINTIFF'S CLAIMS STILL FALL SQUARELY WITHIN THE CARE, CUSTODY OR CONTROL EXCLUSION UNDER MICHIGAN LAW**

   A. **The Care, Custody or Control Exclusion Is Not "Inherently Ambiguous" As Applied Here To Intermet's Possession, Use and Control of Property Within Its Virginia Plant**

Plaintiff cites several Michigan decisions to argue that the care, custody or control exclusion contained in the National Union policy is "inherently ambiguous." For various reasons the Michigan cases, however, are readily distinguishable from the facts here. First, all three of the Michigan cases involved the interpretation of the pre-1986 version of the care, custody or control exclusion. The cases, therefore, addressed a different version of the exclusion than the one contained in the National Union policy. The distinction is important because as one insurance treatise observed, the changes[3] to the exclusion in 1986 "had the effect of divorcing the exclusion from construction exposures and making it primarily applicable to bailment relationships of various kinds – arrangements in which one party temporarily takes possession of another's property for some business purpose.…" <u>Commercial Liability Insurance</u>, § V.D.113 (International Risk Management Institute 2006). This is precisely the factual situation here (i.e. American Axle equipment and castings bailed to Intermet for their use in manufacturing).

---

[3]   The changes included the removal of the phrase "real property" and the elimination of reference to property over which the insured was "exercising physical control."

4

Second, all three of the Michigan cases involve the insured's performance of repair services which ultimately resulted in damage to the very property upon which the insureds were hired to repair. For example, in <u>Arrigo's Fleet</u>, the insured was performing repairs on a truck when the truck caught fire resulting in damage to the truck's cargo. 54 Mich. App. at 483. In <u>Northwestern National</u>, the insured was performing welding services on a tank when the tank caught fire and damaged the tank. 55 Mich. App. at 69. In <u>Bigelow-Liptak</u>, the insured was providing refractory lining services which, due to the incorrect installation of the lining, caused scarring to the outside shell of the refractory. 417 F. Supp. at 1278-79.

In each of the three cases, the Court had to determine whether the property upon which the services were being performed by the insured was in the care, custody or control of the insured (i.e. the contents of the trailer in <u>Arrigo's Fleet</u>, the tank in <u>Northwestern National</u>, and the refractory in <u>Bigelow-Liptak</u>). The focus in these cases, therefore, rested on the issues of whether the property damaged was necessary or merely incidental to the insured's work and whether the insured exercised sufficient control over the property so as to constitute care, custody or control. When viewing the exclusion in this context (damage to property upon which the insured was performing work), the Michigan courts concluded that the exclusion was "inherently ambiguous." National Union, however, is not applying the care, custody or control exclusion in the context at issue in <u>Arrigo's Fleet</u>, <u>Northwestern National</u>, and <u>Bigelow-Liptak.</u>

Unlike in those three cases, National Union's insured was not working on or repairing the property at the time the property was damaged. Instead, National Union's insured was manufacturing products which involved the use of American Axle's equipment and castings. In addition, unlike in the three Michigan cases, there is no dispute that the property damaged was in the care, custody and control of Intermet at the time of the explosion. Indeed, Plaintiff expressly

5

alleges that "the explosion damaged the property of American Axle which was on site and in the possession of Intermet and being used by Intermet to manufacture the product to satisfy the terms of the contract between Intermet and American Axle.…" Complaint at Count I (¶ 50). Plaintiff also argues that the products manufactured by Intermet, which were located on the site at the time of the explosion, were also damaged in the explosion. In viewing the care, custody or control exclusion in the context of this case, the exclusion plainly and unambiguously excludes coverage for Plaintiff's alleged damages.

Moreover, and contrary to Plaintiff's suggestion, the Michigan courts have not concluded that the exclusion is ambiguous when applied in the context arising here. Indeed, the Court in <u>Bigelow-Liptak</u> recognized the distinction between the situation at issue in <u>Bigelow-Liptak</u> (and, by analogy, to the situations at issue in <u>Arrigo's Fleet</u> and <u>Northwestern National</u>) and the facts here, and noted that the care, custody or control exclusion should apply in just this very case. The Court in <u>Bigelow-Liptak</u> stated:

> The decided cases are in fact consistent with this line of reasoning, and almost universally hold that where the insured has brought property onto his premises or in some way controls it to the exclusion of all others then the exclusionary clause does in fact apply. The fact situation at bar is the ***exact opposite***, however, as the insured was working on property far removed from his place of business, property which was on the premises of and under the close supervision of others, and property which was at all times in the observation and control of those who had direct interest in seeing that the insured performed his work properly and did not negligently or otherwise injure the property being worked upon.

<u>Bigelow-Liptak,</u> 417 F. Supp. at 1288 (emphasis added). Here, Factory Mutual alleges that "[a]s a result of Defendant's breach, American Axle's bailed property, which was on Defendant's premises and ***within the Defendant's possession and control***, was lost, inaccessible, unusable and/or destroyed, and American Axle thereby sustained actual property losses in this occurrence." *See* Complaint at ¶ 25 (emphasis added). Accordingly, based upon the Court's

reasoning in Bigelow-Liptak and the material factual distinctions between the situations at issue in Arrigo's Fleet, Northwestern National, and Bigelow-Liptak and the facts alleged here, the Court should apply the care, custody or control exclusion to preclude coverage for the Plaintiff's claims as its alleged damages fall squarely within the terms of the exclusion.

> **B.   All Damages That Flow From Damage To Property In The Care, Custody Or Control Of Intermet Are Excluded**

Although not specifically pled in its Complaint, Plaintiff has for the first time in its Opposition[4] set forth with greater specificity the damages it allegedly sustained as a result of the explosion. In addition to damage to the property of American Axle used in its manufacturing process (which National Union has addressed above), Plaintiff also asserts that its damages include "the business losses of American Axle and the consequential damages sustained by American Axle." *See* Opposition at 3. Plaintiff characterizes these damages as the "extensive damages" vaguely referenced in its underlying Complaint. Regardless of how Plaintiff characterizes these alleged damages, the damages undisputedly flow from property damage (defined in the policy as "physical damage to tangible property, including the loss of use of that property") that falls within the care, custody or control exclusion contained in the National Union policy and, therefore, are also excluded under the policy.

The insuring agreement of the National Union policy states that National Union "will pay those sums…that the Insured becomes legally obligated to pay by reason of liability imposed by law…because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury.…" National Union's defense obligations state, in part, that National Union "will defend any suit against the Insured seeking damages on account of Bodily Injury, Property Damage, Personal

---

[4]   Procedurally, in considering a Rule 12(b)(6) motion, the Court should disregard Exhibit G to Plaintiff's Opposition, as this exhibit is not part of the Complaint. Nevertheless, for the reasons discussed above, Plaintiff's belated recitation of "additional damages" does not overcome the fact that all damages at issue stem from damage to property in the care, custody or control of Intermet, and are therefore, excluded under the policies.

Injury or Advertising Injury.…" Although the National Union policy arguably provides coverage for certain consequential damages, the policy clearly provides that such damages must stem from property damage. Plaintiff recognizes this fact in its Complaint by pleading that the explosion resulted in property damage "to the actual product and merchandise that was to be shipped to American Axle" and "to the American Axle equipment and casting that were on site and used for the production of the product." Complaint at Count I, ¶¶ 42-45 and 49-50. All of Plaintiff's damages arise from the destruction of property in Intermet's Virginia plant. If any such damage did not stem from that destruction, it would not be related to Intermet's alleged acts and omissions, and thus, could not serve to establish a basis for Intermet's alleged liability.

The very property damage that Plaintiff relies upon to recover its consequential damages, however, is expressly excluded under the National Union policy. As discussed above, the National Union policy contains an exclusion that specifically states that "this insurance does not apply to…Property Damage to…Personal property in the care, custody or control of the Insured." The alleged "business losses" and consequential damages sustained by American Axle, therefore, are equally excluded under the National Union policy as they represent consequential damages that stem entirely from property damage that is expressly excluded under the National Union policy (i.e. the consequential damages represent the damages sustained as a result of the loss of use of the damaged merchandise or equipment, each of which were in the care, custody or control of Intermet at the time of the explosion). Stated otherwise, the National Union policy does not provide coverage for consequential damages where the damages flow from property damage that is excluded under the policy.

Although Virginia and Michigan courts have not specifically addressed this issue, other courts have concluded that the care, custody or control exclusion precludes coverage to the

8

damaged property itself as well as the economic losses flowing from the damaged property. For example, in AIU Insurance Co. v. Mallay Corp., 938 F. Supp. 407 (S.D. Tex. 1996), the insured damaged the claimant's turbine while it was burnishing it. The claimant sought damages for the damage to the turbine as well as the economic losses it sustained as a result of the damage to the turbine. Id. at 408. The insured, in turn, sought coverage from its general liability carrier for the cost of repairing the turbine and the consequential damages allegedly sustained by the claimant. Id. The insurer, however, denied coverage for the claim, instituted litigation and moved for summary judgment on the basis that the care, custody or control exclusion precluded coverage for the claims. Id. at 411. The insured did not dispute that the direct damage to the turbine was not covered under the policy but instead argued that the consequential economic losses allegedly suffered by the claimant were recoverable under the policy. Id. The Court, however, concluded otherwise, holding that the claimant's economic losses incurred as a result of the loss of use of the turbine were not recoverable under the policy. Id. at 411. In so holding, the Court stated:

> The Court finds, however, that consequential damages under these circumstances are specifically excluded under the CGL coverage form. Exclusion j(4) excludes coverage for property damage to property in the care, custody or control of the insured, and "property damage" is defined to mean "physical injury to tangible property, *including all resulting loss of use of that property*".… According to the plain and unambiguous language of this exclusion and definition, the Court finds that liability for any resulting loss of use of the turbine is specifically excluded under the CGL coverage form because the turbine was physically injured, resulting in loss of use, while in the care, custody or control of [the insured].… The Court concludes that the CGL portion of the policy affords [the insured] no coverage for the direct damages to the turbine nor [claimant's] alleged resulting economic losses.

Id.; *see also* Borden, Inc. v. Howard Trucking Company, Inc., 454 So. 2d 1081 (La. 1983) (where injury or damage of property is not covered by the policy pursuant to the care, custody or control exclusion, the resulting loss of use of the property is also not covered); Torrington Co. v. Aetna Cas. & Surety Co., 264 S.C. 636, 216 S.E.2d 547 (1975) (where the injury to and/or

9

destruction of property is not covered under a care, custody or control exclusion, the resulting loss of use is not covered and because the loss of use grew out of the injury to and/or destruction of property that was excluded, the loss of use was excluded "as a necessary consequence.").

Like the insurance policies at issue in the Mallay Corp., Borden, Inc., and Torrington Co. cases, the National Union policy defines the term "Property Damage," in part, to include "physical injury to tangible property, including all resulting loss of use of that property." *See* Complaint at Exhibit B, Definitions, IV.H., p. 6. Accordingly, because Plaintiff's newly asserted "business losses" represent damages flowing from property damage (i.e. the loss of use of the damaged merchandise and/or equipment) that is plainly excluded under the National Union policy pursuant to the care, custody or control exclusion, all of Plaintiff's alleged losses are also excluded under the National Union policy.

### C. The Phrase "Personal Property" In the Care, Custody or Control Exclusion Is Plain and Unambiguous

In an attempt to create ambiguity in the care, custody or control exclusion where there is none, Plaintiff argues that the term "personal property" as contained in the in the care, custody or control exclusion is ambiguous. Plaintiff, however, cites no Virginia or Michigan case concluding that the term is ambiguous. Instead, Plaintiff relies upon its own unsupported conclusion that the term is somehow ambiguous when used in the context of the care, custody or control exclusion. Plaintiff's argument is without merit.

Virginia and Michigan courts recognize that a term in an insurance policy is ambiguous if it is susceptible to two or more reasonable meanings. *See* Hill v. State Farm Mus. Auto. Ins. Co., 237 Va. 148, 153, 375 S.E.2d 727,730 (1989); Radenbaugh v. Farm Bureau Gen. Ins. Co., 240 Mich. App. 134, 138, 610 N.W.2d 272, 275 (2000). Plaintiff, however, fails to provide any explanation as to how or why the term "personal property" is susceptible to two or more

reasonable interpretations.  Plaintiff also fails to provide differing meanings for the phrase.  Moreover, "the fact that a policy does not define a relevant term does not render the policy ambiguous." Henderson v. State Farm Fire & Cas. Co., 460 Mich. 348, 354, 596 N.W.2d 190, 194 (1999).  In this regard, Virginia and Michigan courts have held that the words used in insurance policies are to be given their ordinary and customary meaning.  Graphic Arts Mutual Ins. Co. v. Warthen Co., 240 Va. 457, 459, 397, S.E.2d 876 (1990); Nabozny v. Pioneer State Mutual Ins. Co., 461 Mich. 471, 477, 606 N.W.2d 639, 643 (2000).  In addition, "[w]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Graphic Arts Mutual Ins. Co., 240 Va. at 459, 397 S.E.2d at 876.  *See also* Rory v. Cont'l Ins. Co., 473 Mich. 457, 461, 703 N.W.2d 23 (2005).

In its Complaint Plaintiff argues that the property damaged in the explosion includes merchandise to be shipped to American Axle.  Such merchandise plainly constitutes personal property in light of the ordinary and plain meaning of the word, and Plaintiff's alleged damages arising from the damage to the merchandise are therefore, excluded by the policy.  Plaintiff also asserts in its underlying Complaint that "American Axle's bailed property [i.e. American Axle equipment and castings], which was on Defendant's premises and within the Defendant's possession and control" was also damaged in the explosion  *See* Complaint at ¶ 25.  The equipment and castings unquestionably constitute personal property and Plaintiff's alleged damages arising from damage to the equipment and castings are also excluded under the policy.

11

### III. IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THAT PORTION OF PLAINTIFF'S CLAIMS THAT REPRESENT DAMAGE TO THE AMERICAN AXLE PRODUCT AND EQUIPMENT AND CASTINGS

Plaintiff's does not dispute in its Opposition that it is seeking coverage for damages to the American Axle product and equipment present on the Intermet site at the time of the explosion. The product and equipment unquestionably fall within the care, custody or control exclusion. With respect to the American Axle equipment, Plaintiff states in its Opposition that it is seeking damages which include "the property of American Axle *being used* by Intermet in its manufacturing process." Opposition at 3. Although Plaintiff characterizes the equipment as "being used" by Intermet rather than "in the possession of Intermet" as it alleges throughout its Complaint, the equipment plainly falls within Intermet's care, custody or control, and thus, is excluded under the National Union policy.[5] Accordingly, to the extent that the Court concludes that the "extensive damages" or "business losses" are not excluded by the care, custody or control exclusion, National Union requests that the Court dismiss that portion of Plaintiff's damages that represent damage to the actual product and equipment on site at the time of the explosion.

### IV. PLAINTIFF HAS FAILED TO PLEAD FACTS CREATING A JUSTICIABLE CONTROVERSY REGARDING NATIONAL UNION'S DUTY TO DEFEND

Plaintiff argues in its Opposition that its claims against National Union are justiciable because it seeks damages in an amount in excess of $2,000,000, which is in excess of the $1,000,000 policy limits contained in the Liberty Mutual policy. Opposition at 8. Such allegations are not sufficient to assert a justiciable claim against National Union. As set forth in the insuring agreement of the National Union policy, National Union's defense obligations arise

---

[5] To the extent that the equipment was "used" by Intermet, then the damage would still be excluded under the National Union policy pursuant to Exclusion D.1, which precludes coverage for "property damage to property you own, rent, occupy or use."

when the total limits of the underlying policies listed in the Schedule of Insurance have been exhausted or when damages sought are not covered by the underlying policies listed in the Schedule of Underlying Insurance.  Complaint at Exhibit B, Insuring Agreements, II.A. Plaintiff's Complaint does not contain allegations that the underlying policy has been exhausted or that its claims are not covered by the underlying policy.  Accordingly, Plaintiff has not pled sufficient facts that would give rise to National Union's defense obligations under its policy.

## V. CONCLUSION

For the foregoing reasons and for the reasons set forth in its Motion to Dismiss, National Union respectfully requests that the Court grant its motion to dismiss.

DATED this 2nd day of March, 2007.

Respectfully submitted,

JACKSON & CAMPBELL, P.C.

By: _____/s/_____
Richard W. Bryan (VBN 21010)
Christopher P. Ferragamo (VBN 47731)
1120 20th Street, N.W., Suite 300 South
Washington, D.C.  20036
(202) 457-1600 (Tel.)
(202) 457-1678 (Fax)

*Of Counsel*
Warren Lutz
Warren Lutz, Esq.
Jackson & Campbell, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, D.C.
(202) 457-1600 (Tel.)
(202) 457-1676 (Fax)

**Counsel for Defendant National Union Fire Insurance Company of Pittsburgh, PA**

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 2, 2006, I electronically filed a copy of the foregoing Reply of Defendant National Union Fire Insurance Company of Pittsburgh, PA, to Plaintiff's Opposition to National Union's Motion to Dismiss, using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

>James C. Turk, Jr., Esq.
>Stone, Harrison and Turk
>1007 E. Main Street
>P.O. Box 2968
>Radford, VA 24141
>
>Stuart M. Brody, Esq.
>William J. Sneckenberg, Esq.
>Sneckenberg, Thompson & Brody, LLP
>161 North Clark Street
>Suite 3575
>Chicago, IL   60601
>
>Robert Tayloe Ross, Esq.
>Robert S. Reverski, Esq.
>Midkiff, Muncie & Ross
>9030 Stony Point Parkway, Suite 160
>Richmond, Virginia  23235

                                                 /s/
                                      Christopher P. Ferragamo (VBN 47731)

328619v.2