**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY )<br>as assignee of INTERMET INTERNATIONAL, INC., )<br>and INTERMET CORPORATION d/b/a Intermet New )<br>River Foundry and d/b/a Intermet Radford Foundry )<br>d/b/a New River Castings, )<br>)<br>Plaintiff, )<br>)<br>v.                                                          )<br>)<br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, )<br>NATIONAL UNION FIRE INSURANCE COMPANY )<br>OF PITTSBURGH, PA, and AMERICAN GUARANTEE )<br>AND LIABILITY INSURANCE COMPANY, )<br>)<br>Defendants. ) | No. 7:06-cv-00462<br>Judge Glen E. Conrad |

**REPLY MEMORANDUM OF LAW OF**
**LIBERTY MUTUAL FIRE INSURANCE COMPANY**
**IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Liberty Mutual Fire Insurance Company, ("Liberty"), by counsel, submits this Reply Memorandum in support of Liberty's Motion to Dismiss the complaint (the "Complaint") of Plaintiff Factory Mutual Insurance Company ("Factory Mutual" or "Plaintiff"), and states as follows:

**I.    THIS COURT SHOULD GRANT LIBERTY'S MOTION TO DISMISS BECAUSE THE CARE, CUSTODY OR CONTROL EXCLUSION BARS COVERAGE FOR ALL OF PLAINTIFF'S ALLEGED DAMAGES.**

Even accepting all of Plaintiff's allegations in the Complaint as true, and viewing those allegations in the light most favorable to Plaintiff, Plaintiff's Complaint still fails to state a claim upon which relief can be granted. None of Plaintiff's arguments in its Memorandum of Law in

Opposition to Defendant's Motion to Dismiss ("Plaintiff's Memorandum") alters the long-standing position of Liberty in this matter, *i.e.,* Liberty had no duty to defend its insured, Intermet, in the Underlying Action, and it has no duty now to indemnify Plaintiff Factory Mutual as Intermet's successor in interest.

The reason remains simple: regardless of how Plaintiff now attempts to recast its damages (see pages 3-4 of Plaintiff's Memorandum), all of those alleged categories of damage are excluded from coverage because they arise out of damage to "personal property in the care, custody or control of the insured" and are thus excluded under the Care, Custody or Control Exclusion. See Plaintiff's Complaint, Exhibit A, Form No. NRD 207 RG RS 01 99, pp. 2, 5 (the "Care, Custody or Control Exclusion"). Accordingly, any damages that arise out of the damage to American Axle's personal property (for which Plaintiff now seeks to recover) are excluded from coverage.

Moreover, the factual allegations that will establish Liberty's grounds for dismissal in this case have long been established by Factory Mutual's subrogation Complaint (the "Underlying Complaint") against Intermet (Liberty's insured), which was attached as Exhibit F to Plaintiff's Memorandum. Plaintiff's bald allegation of "extensive damages" in the Underlying Complaint must be viewed in light of the very specific factual allegations regarding the circumstances of the loss to American Axle's personal property which Factory Mutual alleged in the Underlying Complaint and, subsequently, in this Declaratory Judgment Action. *See, e.g.,* Underlying Complaint, ¶¶ 10-11, Plaintiff's Exhibit F attached to Plaintiff's Memorandum.

In its Complaint for Declaratory Judgment, Factory Mutual alleges that an "explosion…damaged American Axle equipment and castings that were on the site and used in

the production of the product which was to satisfy the terms of the contract between Intermet and American Axle." *Id.* at Count I (¶ 43). Similarly, Factory Mutual alleges that "the explosion damaged the property of American Axle which was *on site and in the possession of Intermet and being used by Intermet* to manufacture the product to satisfy the terms of the contract between Intermet and American Axle.…" *Id.* at Count I (¶ 50) (emphasis added). Further, Factory Mutual asserts that "the alleged damages included damage to the property of American Axle *being used by and in the possession of Intermet on site* for the manufacture and production of its product." *Id.* at Count I (¶ 54) (emphasis added); *see also* Count III (¶ 47)("the explosion…damaged the American Axle castings in the possession of Intermet and on site being used in the manufacture and production of product …").

Further, Factory Mutual argues that the explosion damaged products and merchandise on the Intermet site being produced pursuant to a contract between Intermet and American Axle. For example, Plaintiff alleges that "the explosion damaged the actual product and merchandise that was to be shipped to American Axle to satisfy the terms of their contract." *Id.* at Count I (¶ 42). Similarly, Plaintiff asserts that the alleged damages were incurred to "property being manufactured and produced by Intermet for their customer, American Axle." *Id.* at Count I (¶53); *see also id.* at Count I (¶ 49)("… the explosion damaged the property being manufactured by Intermet that was to satisfy the terms of the contract …"). The Complaint contains no allegation that the damaged property at issue was outside of the care, custody or control of Intermet at the time of the explosion and fire within Intermet's plant.

This is an action to determine what liability, if any, Liberty and the other insurance defendant owe to the insured, Intermet, under a very specific contract of insurance. Just because

-- 3 --

___

Intermet may have had some ultimate liability to American Axle, it does not follow that coverage for those damages will be available under the Liberty Insurance Contract. Only the specific terms of coverage in the Liberty Insurance Contract can give rise to such liability. No such liability exists, and Plaintiff has completely failed to allege any policy provision(s) that provide such coverage, despite the fact that Plaintiff attached the Liberty Insurance Contract to its Complaint. This is because no such coverage exists. Plaintiff's Complaint should be dismissed.

This case is procedurally complicated, but factually simple. Factory Mutual provided property insurance to its insured, American Axle. Factory Mutual paid its insured and then filed the Underlying Action against Intermet. Intermet went bankrupt. Intermet had filed a claim with Liberty for defense costs and potential indemnification in the Underlying Action, but coverage was properly denied by Liberty. In an effort to obtain some means of shifting the burden of this loss away from itself, Factory Mutual agreed to take the only thing it could get from Intermet in the bankruptcy – the right to bring this action as the successor in interest to Intermet. There is no merit to Factory Mutual's Complaint, just as there was no merit to Intermet's earlier claim which Liberty denied. All damages alleged in the Underlying Complaint, and in Factory Mutual's Declaratory Judgment Complaint, are excluded under the plain terms of the Liberty Insurance Contract. Thus, this Court should grant Liberty's Motion to Dismiss.

## II.   VIRGINIA LAW APPIES TO THIS CASE.

Plaintiff chose to bring this action in the United States District Court for the Western District of Virginia – where the property was located. Plaintiff could have brought this action in

_____

Michigan state court; or in federal district court in Michigan. Yet, Plaintiff has availed itself of the venue closest to the location of the loss – this Court.

Plaintiff's attempts to distinguish this case from those cited by the Defendants regarding the application of Virginia Code §38.2-313 are without merit. The language of the statute is plain, and has been interpreted twice by *this Court*. – two decisions issued by *this Court* concluding, based upon § 38.2-313, that Virginia law applies to the interpretation of general liability policies issued to insureds located outside of Virginia, where the property is located in Virginia.

Importantly, *this Court* recognized in *Lynchburg Foundry* that, in enacting § 38.2-313, the General Assembly intended to alter the general *lex loci contractus* rule regarding the interpretation of insurance contracts.[1]

Plaintiff argues incorrectly that § 38.2-313 should not apply because subsequent to the enactment of the statute some courts have applied a general choice of law rule rather than the statute. Plaintiff's attempt to write the statute out of the Virginia Code is unpersuasive. Indeed, while Liberty cites decisions of this Court applying § 38.2-313 to cases like the one at bar, Plaintiff is unable to cite any case holding that § 38.2-313 does not apply where the alleged damages flow, as here, from property maintained, used and damaged in Virginia. Additionally, no Virginia court has objected to or criticized the holdings in *Lynchburg Foundry* and *Insurance Co. of Ireland*.

---

[1] Notably, *Lynchburg Foundry* involved the interpretation of a general liability policy issued to Intermet, the same insured at issue in this case.

With the exception of the two cases decided by this Court, it does not appear that any Virginia court has been faced with a question of a "true conflict" in connection with an insurance contract that would call for the application of Virginia Code § 38.2-313.[2]

Additionally, there is authority in Virginia that "The law of the place of the performance of the contract governs all questions arising in regards to the performance of a contract." *Reiner v. Carilion Health System,* 2006 WL 2009038 (W.D. Va. July 17, 1986). The Underlying Action was brought by Factory Mutual in this Court. Accordingly, any duty to defend would have been performed in Virginia. Accordingly, all authorities indicate that Virginia law should apply to this case. For the reasons set forth in Liberty's opening Memorandum, the Care, Custody or Control Exclusion applies to exclude coverage for Plaintiff's claims under Virginia law.

### III.   MICHIGAN LAW PRODUCES THE SAME RESULT.

**A.   The Care, Custody or Control Exclusion Applies to Exclude Coverage for Plaintiff's Claims under Michigan Law.**

Michigan courts have consistently interpreted the Care, Custody or Control Exclusion by focusing on the insured's use of the property. Where that use of property is essential to the operations of the insured, Michigan courts consistently hold that the exclusion applies to bar coverage. Plaintiff implies that the Care, Custody or Control Exclusion is not viable under any

---

[2]   The Plaintiff's reliance on *National Independent Coal Operators Ass'n v;. Old Republic Insurance Company,* 544 F. Supp. 520 (W.D. Va. 1982) is misplaced. First, there is no "true conflict" of law in that case. Furthermore, contrary to the implication of the Plaintiff, there is no legislative history or official commentary to the official Virginia Code. Therefore, any annotations in the LexisNexis annotated version of the code are at the discretion of the publisher and are not necessarily instructive on the meaning of the statute. Finally, *National Independent Coal Operators Association* did not address or even discuss Virginia Code section 38.2-313, so its inclusion in the annotations to Section 38.2-313 would appear to be inappropriate. In fact, the issue of choice of law was not raised by the parties in that case, but rather by the Court on its own initiative and apparently without the benefit of briefing or research by the parties, because no party objected to the application of the consistent laws of Kentucky and Virginia.

circumstances in Michigan. Such a reading is not supported. No Michigan court has ever held the exclusion to be a nullity in all circumstances. Michigan courts have not "written out" the exclusion from policy forms. Michigan courts, rather, have applied the Care, Custody or Control Exclusion according to the particular terms in particular policy language, and have applied those terms on a case by case basis. In this case, this Court should reject plaintiff's invitation, apply the exclusion consistent with Michigan law, and find that the Care, Custody or Control Exclusion bars coverage for Factory Mutual's claims.

Plaintiff relies on three Michigan cases which, when analyzed, support the position of Liberty. Each case adopts an analytic framework consistent with Liberty's position.[3] First, all three of the Michigan cases involved the interpretation of the pre-1986 version of the Care, Custody or Control Exclusion. The cases, therefore, addressed a different version of the exclusion than the one contained in the Liberty Insurance Contract. The distinction is important because as one insurance treatise observed, the changes[4] to the exclusion in 1986 "had the effect of divorcing the exclusion from construction exposures and making it primarily applicable to bailment relationships of various kinds – arrangements in which one party temporarily takes possession of another's property for some business purpose.…" *Commercial Liability Insurance*,

---

[3] The Plaintiffs allegations in this case fall squarely within part 2 of the test adopted by the Michigan Court of Appeals, which states in relevant part:

> (2) Where, however, the Property damaged is under the immediate supervision of the insured and is a necessary element of the work involved, the damaged property is considered as in the possessory control of the insured, and the exclusionary clause will effectively operate to exclude the insurer from liability under the policy.

*Arrigo's Fleet Service, Inc. v. Aetna Life and Cas. Co.,* 54 Mich. App. 482, 493, 221 N.W.2d 206, 212-213 (1974).

[4] The changes included the removal of the phrase "real property" and the elimination of reference to property over which the insured was "exercising physical control."

Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

§ V.D.113 (International Risk Management Institute 2006).  This is precisely the factual situation here (i.e. American Axle bailed equipment and castings to Intermet for use by Intermet in manufacturing products for American Axle).

Second, all three of the Michigan cases involved the insured's performance of repair services which ultimately resulted in damage to the very property upon which the insureds were hired to repair.  Instead, Liberty's insured was involved in the manufacturing of products which involved the use of American Axle's equipment and casting at Intermet's plant.  For example, in *Arrigo's Fleet Service, Inc. v. Aetna Life and Casualty Company,* 54 Mich. App. 482, 221 N.W.2d 206 (Mich. Ct. App. 1974), the insured was performing repairs on a truck when the truck caught fire resulting in damage to the truck's cargo. *Id.,* 54 Mich. App. at 483.  In *Northwestern National Insurance Company v. Pennington Brothers, Inc.,* 55 Mich. App. 66, 222 N.W.2d 36 (Mich. Ct. App. 1974), the insured was performing welding services on a tank when the tank caught fire and damaged the tank. *Id,* 55 Mich. App. at 69.  In *Bigelow-Liptak Corporation v. The Continental Insurance Company,* 417 F. Supp. 1276 (E.D. Mich. 1976), the insured was providing refractory lining services which, due to the incorrect installation of the lining, resulted in gouging and scarring to the outside shell of the refractory. *Id.,* 417 F. Supp. at 1278-79.

In each of the three cases, the court had to determine whether the property upon which the services were being performed by the insured was in the care, custody or control of the insured (i.e. the contents of the trailer in *Arrigo's Fleet*, the tank in *Northwestern National*, and the refractory in *Bigelow-Liptak*).  Unlike *Arrigo's Fleet, Northwestern National,* and *Bigelow-Liptak*, Liberty's insured was not working on or repairing the damaged property at the time the property was damaged.  Additionally, unlike the three cases cited above, there is no question that

the property damaged was in the care, custody and control of Intermet at the time of the explosion. Indeed, Plaintiff expressly admits that "the explosion damaged the property of American Axle which was on site and in the possession of Intermet and being used by Intermet to manufacture the product to satisfy the terms of the contract between Intermet and American Axle.…" Complaint at Count I (¶ 50). Plaintiff also admits that the products manufactured by Intermet, which were located on the site at the time of the explosion, were also damaged in the explosion. In viewing the Care, Custody or Control Exclusion in the context of this case, the exclusion plainly and unambiguously excludes coverage for Plaintiff's alleged damages.

Moreover, the Michigan courts, contrary to Plaintiff's suggestion, have not concluded that the exclusion is ambiguous when viewed in the context of the situation at issue in this case. Indeed, the court in *Bigelow-Liptak* recognized the distinction between the situation at issue in *Bigelow-Liptak* (and, by analogy, to the situations at issue in *Arrigo's Fleet* and *Northwestern National*) and the facts here, and noted that the Care, Custody or Control Exclusion should apply in just this very case. The court in *Bigelow-Liptak* stated:

> The decided cases are in fact consistent with this line of reasoning, and almost universally hold that where the insured has brought property onto his premises or in some way controls it to the exclusion of all others then the exclusionary clause does in fact apply. The fact situation at bar is the ***exact opposite***, however, as the insured was working on property far removed from his place of business, property which was on the premises of and under the close supervision of others, and property which was at all times in the observation and control of those who had direct interest in seeing that the insured performed his work properly and did not negligently or otherwise injure the property being worked upon.

*Bigelow-Liptak*, 417 F. Supp. at 1288 (emphasis added). Here, Factory Mutual alleges that "[a]s a result of Defendant's breach, American Axle's bailed property, which was on Defendant's premises and ***within the Defendant's possession and control***, was lost, inaccessible, unusable

and/or destroyed, and American Axle thereby sustained actual property losses in this occurrence." *See* Complaint at ¶ 25 (emphasis added). Accordingly, based upon the court's reasoning in *Bigelow-Liptak* and the material factual distinctions between the situations at issue in *Arrigo's Fleet, Northwestern National*, and *Bigelow-Liptak* and the facts alleged here, this Court should hold that the Care, Custody or Control Exclusion bars coverage for the Plaintiff's claims. The Plaintiff's alleged damages fall squarely within the terms of the Exclusion.

### B. The Liberty Insurance Contract Excludes All Damages that Flow From Damages to Property in the Care, Custody or Control of Intermet.

In Plaintiff's Memorandum, the Plaintiff has for the first time[5] set forth with greater specificity the damages American Axle allegedly sustained as a result of the explosion at the Intermet plant. In addition to damage to the personal property of American Axle that Intermet used in its manufacturing process, the Plaintiff now seeks to expand the types of damages to include "the business losses of American Axle and the consequential damages sustained by American Axle." *See* Plaintiff's Memorandum at 3. The Plaintiff now seeks to assert that these specific damages were included in the term "extensive damages" which the Plaintiff plead in its Underlying Complaint.

The Liberty Insurance Contract requires that any covered damages must stem from property damage "to which this insurance applies." The Care, Custody or Control Exclusion plainly states that "This insurance *does not apply* to . . . "property damage" to . . . Personal property in the care, custody or control of the insured." *Id.,* pp. 2, 5. Because the definition of

---

[5] Procedurally, in considering a Rule 12(b)(6) motion, the Court should disregard Exhibit G to Plaintiff's Memorandum, because Exhibit G is not part of the Complaint. Nevertheless, for the reasons discussed above, Plaintiff's belated recitation of "additional damages" does not overcome the fact that all damages for which the Plaintiff seeks to recover in this Action arise out of damage to property that was in Intermet's care, custody or control at the time of loss, and are therefore, excluded under the Liberty Insurance Contract..

Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

"property damage" includes all resulting loss of use of the damaged property, all such damages are excluded.

Although Virginia and Michigan courts have not specifically addressed this issue in the context of the Care, Custody or Control Exclusion, courts in other jurisdictions have concluded that the Care, Custody or Control Exclusion precludes coverage to the damaged property itself as well as the economic losses flowing from the damaged property. For example, in *AIU Insurance Co. v. Mallay Corp.,* 938 F. Supp. 407 (S.D. Tex. 1996), *aff'd* 116 F.3d 1478 (5th Cir. 1997), insured damaged the claimant's turbine while it was burnishing it. The claimant sought damages for the damage to the turbine as well as the economic losses it sustained as a result of the damage to the turbine. *Id.* at 408. The insured, in turn, sought coverage from its general liability carrier for the cost of repairing the turbine and the consequential damages allegedly sustained by the claimant. *Id.* The insurer, however, denied coverage for the claim, instituted litigation and moved for summary judgment on the basis that the Care, Custody or Control Exclusion precluded coverage for the claims. *Id.* at 411. The insured did not dispute that the direct damage to the turbine was not covered under the policy but instead, argued that the consequential economic losses allegedly suffered by the claimant were recoverable under the policy. *Id.* The court, however, concluded otherwise, holding that the claimant's economic losses incurred as a result of the loss of use of the turbine were not recoverable under the policy. *Id.* In so holding, the court stated:

> The Court finds, however, that consequential damages under these circumstances are specifically excluded under the CGL coverage form. Exclusion j(4) excludes coverage for property damage to property in the care, custody or control of the insured, and "property damage" is defined to mean "physical injury to tangible property, *including all resulting loss of use of that property"*…. According to the plain and unambiguous

-- 11 --

_____
Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

> language of this exclusion and definition, the Court finds that liability for any resulting loss of use of the turbine is specifically excluded under the CGL coverage form because the turbine was physically injured, resulting in loss of use, while in the care, custody or control of [the insured].… The Court concludes that the CGL portion of the policy affords [the insured] no coverage for the direct damages to the turbine nor [claimant's] alleged resulting economic losses.

*Id.*; *see also Borden, Inc. v. Howard Trucking Company, Inc.,* 454 So. 2d 1081 (La. 1983) (where injury or damage of property is not covered by the policy pursuant to the Care, Custody or Control Exclusion, the resulting loss of use of the property is also not covered); *Torrington Co. v. Aetna Cas. & Surety Co.,* 264 S.C. 636, 216 S.E.2d 547 (1975) (where the injury to and/or destruction of property is not covered under a Care, Custody or Control Exclusion, the resulting loss of use is not covered and because the loss of use grew out of the injury to and/or destruction of property that was excluded, the loss of use was excluded "as a necessary consequence.").

Accordingly, because Plaintiff's newly asserted "business losses" represent nothing more than damages flowing from excluded property damage -- damages to which the Liberty Insurance Contract "does not apply" -- Plaintiff's alleged damages, however denominated, are also excluded under the Liberty Insurance Contract.

    **C.**    **The Phrase "Personal Property" In the Care, Custody or Control Exclusion Is Plain and Unambiguous**

In an attempt to create ambiguity in the Care, Custody or Control Exclusion where there is none, Plaintiff asserts that the term "personal property" as contained in the in the Care, Custody or Control exclusion is ambiguous. Plaintiff, however, cites no Virginia or Michigan case concluding that the term is ambiguous. Instead, Plaintiff relies upon its own unsupported conclusion that the term is somehow ambiguous when used in the context of the Care, Custody or Control Exclusion. Plaintiff's argument is without merit.

-- 12 --

Both Virginia and Michigan courts recognize that a term in an insurance contract is ambiguous if it is susceptible to two or more reasonable meanings. *See Hill v. State Farm Mus. Auto. Ins. Co.,* 237 Va. 148, 153, 375 S.E.2d 727,730 (1989); *Vanguard Ins. Co. v. Racine*, 224 Mich. App. 229, 233, 568 N.E.2d 156, 158 (1997). Plaintiff fails to provide any explanation as to how or why the term "personal property" is susceptible to two or more reasonable meanings. Plaintiff also fails to provide differing meanings for the phrase. Moreover, "the fact that a policy does not define a relevant term does not render the policy ambiguous." *Henderson v. State Farm Fire & Cas. Co.,* 460 Mich. 348, 354, 596 N.W.2d 190, 194 (1999). In this regard, both Virginia and Michigan courts have held that the words used in insurance contracts are to be given their ordinary and customary meaning. *Graphic Arts Mutual Ins. Co. v. Warthen Co.,* 240 Va. 457, 459, 397, S.E.2d 876 (1990); *Nabozny v. Pioneer State Mutual Ins. Co.,* 461 Mich. 471, 477, 606 N.W.2d 639, 643 (2000). Additionally, "[w]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Graphic Arts Mutual Ins. Co.,* 240 Va. at 459, 397 S.E.2d at 876. *See also Rory v. Cont'l Ins. Co.,* 473 Mich. 457, 461, 703 N.W.2d 23 (2005).

Plaintiff's Underlying Complaint identifies American Axle's property as "bailed property" and "tooling supplies and materials." See Underlying Complaint, ¶¶10-11, Count I ¶25, Count II ¶21 (Plaintiff's Exhibit F to Plaintiff's Memorandum). Such property plainly constitutes "personal property" in light of the ordinary and customary meaning of the phrase.

Plaintiff's Complaint in this Declaratory Judgment Action likewise identifies American Axle's property as "the actual product and merchandise that was to be shipped to American Axle to satisfy the terms of their contract," Complaint, p. 8, Count I ¶42, and "American Axle

-- 13 --

equipment and castings that were on site and used in the production of the product . . .", Complaint, p. 8, Count I ¶43.

Accordingly, there is no question but that American Axle's property was "personal property" and Plaintiff's arguments to the contrary are without merit.

## IV. LIBERTY HAD NO DUTY TO DEFEND INTERMET IN THE UNDERLYING ACTION.

### a. Plaintiff's Statement of Virginia Law on Duty to Defend is Erroneous.

Plaintiff has misstated the standard under Virginia law for determining an insurance company's duty to defend its insured. The leading case for evaluating an insurance company's duty to defend its insured is the opinion of the Supreme Court of Virginia in *Travelers Indemnity Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247 (1978). In *Obenshain,* the Supreme Court of Virginia stated that:

> The claims set forth in the motions for judgment filed by the Halls have not been reduced to judgment. We look, therefore, only to the allegations of the motions to determine whether Travelers is obligated to provide Brennan with coverage under its policy. If the allegations state a case which may be covered by the policy, Travelers has a duty to defend, and it may be liable also to pay any judgment rendered upon those allegations. On the other hand, if it appears clearly that Travelers would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend. These rules are established by our prior decisions. Norman v. Insurance Co. of North America, 218 Va. 718, 239 S.E.2d 902, 905-06 (1978); London Guar. Co. v. White & Bros., 188 Va. 195, 198-200, 49 S.E.2d 254, 255-56 (1948); Accident Corp. v. Washington Co., 148 Va. 829, 843-44, 139 S.E. 513, 517 (1927).

*Id.,* 219 Va. at 46, 245 S.E.2d at 249.

Plaintiff cites as its primary authority a Virginia Circuit Court case to which no other Virginia court has cited. That case, *Northern Virginia Funeral Choices, Inc. v. Erie Ins. Co.,* 61

Va. Cir. 352 (2003), cites three leading Virginia cases on the duty to defend, all three of which found that the insurance companies at issue had *no duty to defend. See Brenner v. Lawyer's Title Ins. Corp.,* 240 Va. 185, 193, 397 S.E.2d 100, 104 (1990) (holding that insurer had no duty to defend because it appeared clearly that insurer would not be liable under the insurance contract for any judgment based upon the allegations of the insured's complaint); *Reisen v. Aetna Life and Cas. Co.,* 225 Va. 327, 302 S.E.2d 529 (1983) (same); *Solers v. Hartford Cas. Ins. Co.,* 46 F.Supp.2d 785 (E.D. Va. 2001) (same).

Liberty's duty to defend its insured, if any, would arise out of allegations of "property damage" to which the Liberty Insurance Contract applies. Accordingly, the bald allegation in the Underlying Complaint that American Axle has experienced "extensive damages" cannot support a claim for a duty to defend or indemnify.

As shown in Liberty's opening Memorandum, Factory Mutual specifically pled in the Underlying Complaint that "[a]s a result of Defendant's breach, American Axle's bailed property, which was on Defendant's premises and **within the Defendant's possession and control**, was lost, inaccessible, unusable and/or destroyed, and American Axle thereby sustained *actual property losses* in this occurrence." *See* Underlying Complaint at ¶ 25 (emphasis added).

Thus, regardless of the extent of American Axle's damages to its personal property, those damages are not covered under the Liberty Insurance Contract because they are excluded under the Care, Custody or Control Exclusion. Where there is no coverage under the Insurance Contract, no duty to defend can arise.

> **b.      Even If Michigan Law Applies, Liberty Had No Duty To Defend Internet Because the Care, Custody or Control Exclusion Bars All Coverage for Plaintiff's Claims.**

-- 15 --

_____
Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

Under Michigan law:

> The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible. In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor.

*Smorch v. Auto Club Group Ins. Co.,* 179 Mich. App. 125, 128m 445 N.W.2d 192, 193 (Mich. Ct. App. 1989), *citing The Detroit Edison Co. v. Michigan Mut. Ins. Co.,* 102 Mich. App. 136, 141-142, 301 NW.2d 832 (1980).

An insurer has no duty to defend against claims for damages expressly excluded from the policy. *Meridian Mutual Ins. Co. v. Hunt,* 168 Mich. App. 672, 677, 425 N.W.2d 111, 113-114 (1988). Where the facts show that the theories and damages asserted against the insured fall outside of the scope of the policy, the duty to defend ceases. *American Bumper & Mfg. Co. v Hartford Fire Ins. Co.,* 207 Mich. App. 60, 67-68, 523 N.W.2d 841, 844-845 (1994). Here, with the facts provided in plaintiff's complaint and the guidelines for applying those facts to the Care, Custody or Control Exclusion as established by Michigan courts, Liberty had no duty to defend Intermet in the Underlying Action.

**c.    Plaintiff Has Claimed No Damages for Defense Costs in the Underlying Action.**

Additionally, while the Plaintiff makes much of the issue of the duty to defend, Plaintiff has completely failed to allege any damages related to Intermet's cost to defend the Underlying Action. Accordingly, the issue of the duty to defend would appear to be moot.

## VII. CONCLUSION

For the foregoing reasons, Liberty respectfully requests that the Court grant the following relief:

1. Grant Liberty Mutual Insurance Company's Motion to Dismiss all counts in the Complaint with prejudice on the Grounds that the Plaintiff Factory Mutual sued the wrong Defendant;

2. Grant Liberty's Motion to Dismiss Count I of the Complaint with prejudice on the grounds that Plaintiff Factory Mutual has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure;

3. Grant Liberty's Motion to Dismiss Count II of the Complaint with prejudice on the grounds that no justiciable controversy exists between Liberty and Factory Mutual;

4. Alternatively, Liberty requests that this Court declare, in response to Count II of the Complaint, that Liberty Mutual Fire Insurance Company had no obligation under the Liberty Insurance Contract to defend or indemnify Factory Mutual's assignor, Intermet Corporation and/or Intermet International, for the claims alleged in Factory Mutual's underlying Complaint in Action No. 7:03CV00518, *Factory Mutual Ins. Co. v. Intermet International, Inc.,* in the United States District Court for the Western District of Virginia, Roanoke Division.

5. Grant such other relief that the Court deems mete and proper.

Done this 2nd Day of March, 2007.

        Respectfully submitted,
        LIBERTY MUTUAL INSURANCE COMPANY
        LIBERTY MUTUAL FIRE INSURANCE COMPANY


        /s/ Robert Tayloe Ross

        By Counsel

MIDKIFF, MUNCIE & ROSS, P.C.
Robert Tayloe Ross (VSB No. 29614)
Robert S. Reverski, Jr. (VSB No. 42383)
MIDKIFF, MUNCIE AND ROSS, P.C.
9030 Stony Point Parkway, Suite 160
Richmond, Virginia  23235
(804) 560-9600 - Telephone
(804) 560-5997 - Facsimile

_____
Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462

CERTIFICATE OF SERVICE

       I hereby certify that on this 2nd day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

       Stuart M. Brody, Esq.
       William J. Sneckenburg, Esq.
       Sneckenberg, Thompson & Brody, LLP
       161 North Clark Street
       Suite 3575
       Chicago, Illinois  60601
       (312) 782-9320

       James C. Turk, Jr., Esq.
       Stone, Harrison, and Turk
       1007 E. Main Street
       P.O. Box 2968
       Radford, VA  24141/24143-2968
       Phone: (540) 639-9056
       Fax: (540) 731-4665

       Christopher P. Ferragamo, Esq.
       Jackson & Campbell, P.C.
       1120 20th Street, N.W.
       Suite 300 South
       Washington, D.C.
       (202) 457-1600 (Tel.)
       (202) 457-1676 (Fax)

       /s/ Robert  Tayloe Ross

Reply Memorandum of Law in Support of Defendant Liberty's Motion to Dismiss
Case No. 7:06CV00462