IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| FACTORY MUTUAL INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 7:06-cv-00462 |
| v. ) | Judge Glen E. Conrad |
| ) | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**JOINT SUPPLEMENTAL MEMORANDUM OF LIBERTY MUTUAL FIRE
INSURANCE COMPANY AND NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS**

Defendants Liberty Mutual Fire Insurance Company ("Liberty Mutual") and National Union Fire Insurance Company of Pittsburgh, PA ("National Union") (collectively "Defendants"), in further support of Defendants' Motions to Dismiss the Complaint of Plaintiff Factory Mutual Insurance Company ("Factory Mutual" or "Plaintiff"), state as follows:

**I.      PRELIMINARY STATEMENT**

On April 5, 2007, the Court heard oral arguments on the Defendants' Motions to Dismiss.[1] At the conclusion of the hearing, the Court invited the parties to submit supplemental briefs on the limited issue of whether the insurance contracts (the "Insurance Contracts") that Liberty Mutual and National Union issued to their insured, Intermet Corporation ("Intermet"), exclude coverage for damage to property (hereinafter called the "Product") that had been manufactured by Intermet for American Axle, but which had not yet been delivered to American Axle. This Supplemental Memorandum addresses that single issue. The Insurance Contracts exclude coverage for the Product, regardless of whether title had passed to American Axle or remained with Intermet. We explain below.

---

[1] A copy of the transcript of the April 5 hearing is docketed as document number 28 for the Court's reference.

Notably, although the Complaint does not address the concept of ownership of the Product, the applicable provisions of the Uniform Commercial Code, as applied to the terms of the contract between Intermet and American Axle, show that Intermet held title to the Product at the time it was destroyed at the Intermet plant in Virginia. The Insurance Contracts, therefore, exclude coverage for "property damage" to the Product under at least two applicable exclusions. Because the Product was owned by Intermet at the time it was destroyed, then the Insurance Contracts exclude coverage pursuant to the Owned Property Exclusion, which excludes coverage for "Property damage to Property you own, rent, or occupy."[2] In addition, because the Product was in the care, custody or control of Intermet at the time it was damaged, then the Insurance Contracts exclude coverage for damage to the Product pursuant to the Care, Custody or Control Exclusion.[3]

Additionally, the Insurance Contracts exclude coverage for any consequential damages that arise from damage to the Product. The Defendants incorporate by reference their previous arguments on this point, as raised in their Reply Memoranda. *See AIU Insurance Co. v. Mallay Corp.*, 938 F. Supp. 407 (S.D. Tex. 1996) (concluding that commercial general liability insurance contract did not provide coverage for consequential damages where the Care, Custody or Control Exclusion barred coverage).

---

[2] Liberty Mutual Insurance Contract, Policy No. RG2-641-004228-079, Form No. NRD 207 RG R5 02 99, Exclusion 2(j)(1), p. 5 of 24 (See Exhibit A to Plaintiff's Complaint); National Union Insurance Contract, Policy No. BE 701 93 80, Form No. 57697 (6/93), Exclusion D(1), p. 7 (See Exhibit B to Plaintiff's Complaint).

[3] Liberty Mutual Insurance Contract, Policy No. RG2-641-004228-079, Form No. NRD 207 RG R5 02 99, Exclusion 2(j)(4), p. 5 of 24 (See Exhibit A to Plaintiff's Complaint); National Union Insurance Contract, Policy No. BE 701 93 80, Form No. 57697 (6/93), Exclusion D(2), p. 7 (See Exhibit B to Plaintiff's Complaint).

**II.     ARGUMENT**

    **A.     Pursuant to the Uniform Commercial Code and the Purchase Order, the Undelivered Product Was Owned by Intermet.**

Assuming, for purposes of this memorandum, that the ownership of the Product is relevant to the application of the Care, Custody or Control Exclusion, the Uniform Commercial Code ("UCC") and the pertinent American Axle Standard Purchase Order Terms and Conditions ("Purchase Order") dictate that the damaged Product was owned by Intermet and, for the reasons set forth below, would be excluded by the Care, Custody or Control Exclusion.

The relevant provisions of the UCC, as adopted by both Virginia and Michigan are identical. Whether under Virginia or Michigan law, the result is the same: the Product was owned by Intermet at the time of loss.

The UCC governs contracts involving the sale of goods.[4] The term "sale" is defined as "the passing of title from the seller to the buyer for a price."[5] Additionally, "unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods…."[6] The UCC further provides that "if the contract requires delivery at destination, title passes on tender there."[7]

The Purchase Order, which is attached as Exhibit A to Factory Mutual's underlying Complaint, is identified by Factory Mutual as the contract that reflects the terms and conditions between American Axle and Intermet. Delivery and Payment for the Product are addressed in

---

[4] *See* Rapoca Energy Corp. v. AMCI Export Corp., 2001 U.S. Dist. LEXIS 6045 at * 3 (W.D. Va. 2001); Va. Code § 8.2-102; Ace Concrete Products Co. v. Charles J. Rogers Constr. Co., 69 Mich. App. 610, 245 N.W.2d 353 (1976); Mich. Comp. Laws § 440.2102 (2007).

[5] *See* Va. Code § 8.2-106(1); Mich. Comp. Laws § 440.2106(1).

[6] *See* Va. Code § 8.2-401(2); Mich. Comp. Laws § 440.2401(2).

[7] *See* Va. Code § 8.2-401(2)(b); Mich. Comp. Laws § 440.2401(2)(b).

paragraph 2 of the Purchase Order, entitled "Shipping, Billing and FLSA Certification." Pursuant to that paragraph, Intermet was obligated to deliver the manufactured products to American Axle and, upon receipt of the goods and a receipt of a proper invoice, American Axle would issue payment for the goods. *See* Exhibit A to Underlying Complaint, Purchase Order, p. 1, ¶ 2.

The Purchase Order does not address when title to the goods passes from Intermet to American Axle and, thus, absent a provision addressing title to the goods, the default rules set forth in UCC § 2-104 govern which of the parties possessed title to the property before delivery of the goods. Since the Purchase Order contemplates and requires delivery of the goods at a destination, UCC § 2-104(2)(b) would govern when title conveys such that "title [to the manufactured products] passes on tender there." Because the Product was not delivered as required by the Purchase Order, Intermet maintained title to the Product at the time it was destroyed.[8]

### B. Coverage for Damage to the Product is Excluded Because the Property was Owned by Intermet.

The Care, Custody or Control Exclusion is only one part of a more comprehensive exclusion regarding "property damage" under both of the Insurance Contracts. An additional subpart of that same exclusion excludes coverage for "Property damage to property you own, rent or occupy" (hereinafter the "Owned Property Exclusion"). *See supra,* Footnote 1.

---

[8] In light of the fact that the goods being manufactured were owned by Intermet, Defendants assert that Factory Mutual, as the insurer of American Axle, would not have any right to recover for the damages to the goods owned by Intermet. Additionally, because the Liberty Mutual and National Union policies are third-party liability policies, Defendants assert that Factory Mutual would not be entitled to recover for the damage to the product as an assignee of Intermet either. Interestingly, Plaintiff alleges in its Complaint that under the Commercial Property Insurance Contract issued to Intermet by Zurich "the property to be insured . . . included "property built, installed, serviced or sold by the insured, until completed and accepted by the Insured's customer." Complaint, p. 23, Count V, ¶ 35.

As noted in the commentary by the National Underwriter's FC&S Commercial General Liability Coverage Guide, the Owned Property Exclusion applies to all "property," both real and personal:

> Since the word "property" is not qualified, this exclusion applies to both real and personal property that the named insured owns, rents, or occupies. *The purpose of the exclusion is to avoid covering an exposure that can be insured by some form of property insurance*.

FC&S Commercial General Liability Coverage Guide, Damage to Property, Exclusion J – Damage to Property http://lp.nationalunderwriter.com/cgl/frames.asp (emphasis added); s*ee also* Charter Oak Fire Ins. Co. v. Coleman, 273 F. Supp. 2d 903, 913 (E.D. Ken. 2003) (noting that the primary function of Owned Property and Care, Custody or Control Exclusions "is to prevent the insured from using a liability insurance policy as if it provided property insurance and insulate against the 'moral hazard' problem where an insured has less incentive to take precaution owing to the existence of insurance."); State Farm Fire & Cas. Co. v. English Cove Assoc., 121 Wash. App. 358, 368, 88 P.3d 986, 992 (2004) (recognizing that "third party insurance provides protection for the policyholder for liability it incurs to someone else, while first party insurance provides protection for losses to the policyholder's own property" and that "an owned property exclusion prevents a CGL policy from providing first-party benefits to the insured [and] thus, the exclusion bars coverage to the extent of losses to the insured's own property.")

The focus, then, of the Owned Property Exclusion is to exclude coverage for damage to property in which the Insured has an ownership interest. Accordingly, because title to the Product remained with Intermet at the time the explosion and fire damaged the goods, the Owned Property Exclusions bars coverage for damage to the Product under both the Liberty Insurance Contract and the National Union Insurance Contract.

### C.  Coverage for the Damage to the Product is Further Excluded Because the Product Was in the Care, Custody or Control of Intermet.

Although courts in Virginia[9] enforce the plain language of the Care, Custody or Control Exclusion for claims for damage to personal property in Virginia,[10] they have not expressly discussed the scope of that Exclusion.  Courts from other jurisdictions, as well as one prominent insurance treatise, however, have addressed the scope of the Care, Custody or Control Exclusion and conclude that the application of the Care, Custody or Control Exclusion depends upon the insured's *possession* of the property at issue.  Ownership of the Product, then, is not relevant to determine the application of the Care, Custody or Control Exclusion.

For example, Couch on Insurance has described the Care, Custody or Control Exclusion in the following manner:

> The great majority of the cases support the view that property in the care, custody, or control of the insured refers to possessory handling of the property as distinguished from proprietary control.

Couch on Insurance, 3d, § 126.22 (1997).  "Stated differently, the concept of 'control' in an exclusion of liability as to property in the 'care, custody or control' of the insured refers only to the *physical* fact of possession and does not contemplate control or ownership." Kirchner v. Hartford Acc. & Indem. Co., 440 S.W.2d 751, 756 (Mo. App. 1969), *citing* Couch on Insurance, 2d § 44:426, p. 12; Opies Milk Haulers, Inc. v. Twin City Fire Ins. Co., 755 S.W.2d 300, 303 (Mo. App. 1988) (same); Phoenix of Hartford v. Holloway Corp., 268 So. 2d 195, (Fla. App. 4th 1972) (holding that cases which have considered the Care, Custody or Control Exclusion have

---

[9] During the hearing on April 5, 2007, this Court provided the parties with guidance on their supplemental memoranda by indicating that Virginia law would apply to the coverage issues in this case.  *See* Transcript at p. 48; Virginia Code § 38.2-313; City of Lynchburg v. Insurance Co. of Ireland, Ltd., 1990 U.S. Dist. LEXIS 19832 at * 4 (W.D. Va. 1990); City Insurance Company v. Lynchburg Foundry Co., 1989 U.S. Dist. LEXIS 18205 at * 2 (W.D. Va. 1989).

[10] The Care, Custody or Control Exclusion is clear and unambiguous and has been applied by courts in Virginia. City of Virginia Beach v. Aetna Casualty and Surety Co., 426 F. Supp. 821 (E.D. Va. 1976).

established a distinction between "possessory control" and "proprietary control" and that courts have usually held the Care, Custody or Control Exclusion applies as to the property under possessory control); Mid-Continent Casualty Co. v. Peerless Boiler & Engineering Co., 398 P.2d 79 (Okla. 1964) (stating that the court will follow the majority of courts in holding that the language of the Care, Custody or Control Exclusion clause must be construed as referring to possessory handling of the property, rather than requiring proprietary control); Condenser Service & Engineering Co. v. American Mut. Liability Ins. Co., 58 N.J. Super. 179, 155 A.2d 789, (N.J. Sup. 1959) (noting that the word "control" as used in the Care, Custody or Control Exclusion contemplates possessory handling, not proprietary control.).

The above-cited distinctions between *custody* of property and the *ownership* of property have been recognized by the Supreme Court of Virginia in addressing the scope of the term "custody" in an automobile policy. Aetna Ins. Co. v. Kaplan, 206 Va. 1, 141 S.E.2d 725, (1965). In Kaplan, the Court held that "Custody of things means to have them in charge -- safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy of authority, as does possession in its full significance." Id. at 4, 141 S.E.2d at 727. Here, Intermet not only had custody, but possession of the goods, further supporting application of the coverage exclusion.

As Defendants noted in their earlier Memoranda, the Plaintiff unequivocally asserts in both the Complaint and the Underlying Complaint that the Product was in the care, custody or control of Intermet at the time of the explosion and fire.[11]  For example, Plaintiff contends in paragraph 42 of its Complaint that "[i]n addition to the Intermet plant and premises, the explosion damaged the actual product and merchandise that was to be shipped to American Axle

---

[11] Complaint at ¶¶ 42, 43, 49, 50, 53, 54, and 56; Underlying Complaint at ¶¶ 10, 11 at 25;

to satisfy the terms of the contract." In later paragraphs, Plaintiff identifies the manufactured property damaged in the explosion as products that had not yet completed the manufacturing process. *See* Complaint at ¶ 49 ("…the explosion damaged the property of Intermet and damaged property being manufactured by Intermet that was to satisfy the terms of the contract between Intermet and American Axle"), ¶ 53 ("the alleged damages were incurred to property being manufactured and produced by Intermet…"), ¶ 56 ("[t]he damage to the property in question was product being manufactured and produced by Intermet for their (sic) customer, American Axle").[12] The Complaint plainly states that the products manufactured and/or that were being manufactured were in the custody (i.e. possession) of Intermet at the time of the explosion. Accordingly, the Care, Custody or Control Exclusion excludes coverage for damage to the Product as a matter of law.[13]

### III.  CONCLUSION

For the foregoing reasons and for the reasons set forth in their Motions to Dismiss, supporting Memoranda, Replies to Plaintiff's Opposition to the Motions to Dismiss, and oral argument, Liberty Mutual and National Union respectfully request that the Court grant their Motions to Dismiss with prejudice.

DATED this 2nd day of May, 2007.

---

[12]  The identical allegation is also set forth in paragraph 75 of Plaintiff's Complaint.

[13]  Other exclusions may apply as well. For example, the Insurance Contracts contain identical exclusions that would bar coverage for "property damage" to "your product" arising out of it or any part of it. Liberty

Respectfully submitted,

LIBERTY MUTUAL FIRE INSURANCE COMPANY

By:  /s/ Robert Tayloe Ross
    Robert Tayloe Ross (VSB No. 29614)
    Robert S. Reverski (VSB No. 42383)
    MIDKIFF, MUNCIE AND ROSS, P.C.
    9030 Stony Point Parkway, Suite 160
    Richmond, Virginia  23235
    (804) 560-9600 – Telephone
    (804) 560-5991 – Facsimile

    and

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA

By:  /s/ Christopher P. Ferragamo
    Richard W. Bryan (VBN 21010)
    Christopher P. Ferragamo (VBN 47731)
    JACKSON & CAMPBELL, P.C.
    1120 20th Street, N.W., Suite 300 South
    Washington, D.C.  20036
    (202) 457-1600 - Telephone
    (202) 457-1678 - Facsimile

*Of Counsel*
Warren Lutz, Esq.
Jackson & Campbell, P.C.
1120 20th Street, N.W.
Suite 300 South
Washington, D.C.
(202) 457-1600 - Telephone
(202) 457-1678 - Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2007, I electronically filed a copy of the foregoing Joint Supplemental Memorandum using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

>James C. Turk, Jr., Esq.
>Stone, Harrison and Turk
>1007 E. Main Street
>P.O. Box 2968
>Radford, VA 24141
>
>Stuart M. Brody, Esq.
>William J. Sneckenberg, Esq.
>Sneckenberg, Thompson & Brody, LLP
>161 North Clark Street
>Suite 3575
>Chicago, IL   60601

>/s/ Robert Tayloe Ross
>Robert Tayloe Ross (VSB No. 29614)


>/s/ Christopher P. Ferragamo
>Christopher P. Ferragamo (VBN 47731)

336594v.1