CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 26 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| FACTORY MUTUAL INSURANCE CO. as assignee of INTERMET INTERNATIONAL, INC., and INTERMET CORP. d/b/a Intermet New River Foundry and d/b/a Intermet Radford Foundry d/b/a new River Castings, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE CO., NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PA, and AMERICAN GUARANTEE AND LIABILITY INSURANCE CO., <br><br> Defendants. | Civil Action No. 7:06CV00462 <br><br> **MEMORANDUM OPINION** <br><br> By: Hon. Glen E. Conrad <br> United States District Judge |

This case is before the court on the motions to dismiss of defendants Liberty Mutual Insurance Company ("Liberty Mutual") and National Union Fire Insurance Company ("National Union"). For the reasons set forth below, the motions will be granted.

## FACTUAL BACKGROUND

On March 5, 2000, an explosion and fire took place at the New River Castings facility in Radford, Virginia owned by Intermet International, Inc. and Intermet Corporation (collectively referred to as "Intermet"). Factory Mutual Insurance Company ("Factory Mutual") filed a subrogation action against Intermet on August 12, 2003, seeking to recover the amount paid to its insured, American Axle & Manufacturing Company, Inc. ("American Axle"), for losses sustained as a result of the explosion and fire. Those losses included merchandise and products that Intermet was producing for American Axle as well as equipment and castings that were on

site and used in the production of such merchandise and products. Shortly thereafter, Intermet filed for bankruptcy and the subrogation action was stayed. Intermet subsequently assigned all of its rights to Factory Mutual to "file, prosecute and/or obtain a declaratory [judgment] for coverage under the Intermet Insurance Policies in lieu of Factory Mutual's direct claims against Intermet."

On August 1, 2006, Factory Mutual filed the instant action against Liberty Mutual, National Union, and American Guarantee and Liability Insurance Company, alleging that the insurers breached their duties to defend and indemnify Intermet for the original action filed by Factory Mutual. The complaint asserts two claims against each insurer - the first for breach of contract for failure to defend and indemnify and the second seeking a declaration that the insurer was required to defend and indemnify Intermet for the original action. Jurisdiction is based upon diversity of citizenship.[1] Factory Mutual seeks an amount in excess of $2,000,000.

By order entered September 29, 2006, American Guarantee and Liability Insurance Company was voluntarily dismissed from the case. Both Liberty Mutual and National Union then proceeded to file motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Both insurers argue that all of the damages alleged by Factory Mutual are excluded by the plain language of their respective policies.

## STANDARD OF REVIEW

As the Supreme Court recently noted, a complaint need not assert detailed factual

---

[1] Factory Mutual is a Rhode Island corporation, with its principal place of business in Johnson, Rhode Island. Liberty Mutual is a Massachusetts corporation, with its principal place of business in Boston. National Union is a Pennsylvania corporation, with its principal place of business in Pittsburgh. American Guarantee and Liability Insurance Company is a New York corporation, with its principal place of business in Schaumburg, Illinois.

2

Case 7:06-cv-00462-GEC   Document 31   Filed 09/26/07   Page 2 of 18   Pageid#: 468

allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Therefore, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must determine "whether the complaint, under the facts alleged and under any facts that could be proved in support of the complaint, is legally sufficient." Eastern Shore Market, Inc. v. J.D. Assocs. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). The court must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff.

The plaintiff in this case has attached certain documents as exhibits to its complaint, including the relevant insurance policies as well as the denial letters from both Liberty Mutual and National Union. Inasmuch as the authenticity of these documents is not challenged, the court may properly consider those documents in this case without converting the motion to one for summary judgment. See American Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (holding that a court may consider certain extrinsic evidence in ruling on a 12(b)(6) motion if it was "integral to and explicitly relied on in the complaint" and the opposing party does not challenge its authenticity).

## THE INSURANCE POLICIES

1. <u>Liberty Mutual</u>

Liberty Mutual issued a commercial liability policy which was effective from November 1, 1999 through November 1, 2000, covering the period of the explosion which took place on May 5, 2000. This policy provided coverage of up to $1,000,000 per occurrence. The policy stated as follows:

3

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

    . . .

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage": is caused by an "occurrence" that takes place in the "coverage territory";

    . . .

See Complaint, Exhibit A, p. 1. The policy went on to define an "occurrence" as follows: an accident, including continuous or repeated exposure to substantially the same general harmful conditions. See Complaint, Exhibit A, p. 22. The policy defined "property damage" as follows:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

See Complaint, Exhibit A, p. 23.

The policy also included certain exclusions of coverage. The pertinent exclusion related to damage to certain property as follows:

j. Damage to Property

    "Property damage" to:

    (1) Property you own, rent, or occupy;

4

> (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
>
> (3) Property loaned to you;
>
> (4) Personal property in the care, custody or control of the insured;
>
> . . .

See Complaint, Exhibit A, p. 5. In its letter dated March 30, 2005, Liberty Mutual denied coverage stating that because "the property for which Factory Mutual seeks to recover damages was in the possession and control of Intermet at the time is [sic] was lost, inaccessible, unusable and or destroyed the application of exclusion j.(4) negates any coverage under the policy." See Complaint, Exhibit D, p. 2.

2. <u>National Union</u>

National Union issued an umbrella commercial liability policy which was effective from November 1, 1999 through November 1, 2000, covering the period of the explosion which took place on May 5, 2000. The policy provided as follows:

> I. Coverage
>
> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world.
>
> . . .
>
> IV. Definitions
>
> . . .
>
> H. Occurrence means:

1. As respects Bodily Injury or Property Damage, an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the insured. All such exposure to substantially the same general conditions shall be considered as arising out of one Occurrence;

. . .

K    Property Damage means:

1. Physical injury to tangible property, including all resulting loss of use of that property.

. . .

See Complaint, Exhibit B. The National Union policy also included the following relevant exclusions of coverage:

V.   Exclusions

This insurance does not apply to:

. . .

D.   Property Damage to:

1. Property you own, rent, occupy or use:

2. Personal property in the care, custody or control of the Insured.

See Complaint, Exhibit B. National Union has also denied coverage for the damages claimed by Factory Mutual on behalf of its insured based upon the exclusion for damage to property in the care, custody or control of its insured, Intermet.

## **CHOICE OF LAW**

Where subject-matter jurisdiction is based upon diversity of citizenship, a federal district court must apply the substantive law and choice of law rules of the forum state, in this case

Virginia. Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 623-24 (4th Cir. 1999) (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496-97 (1941)). According to Virginia law, questions with regard to the interpretation of a contract, including an insurance contract, are resolved by applying the law of the state where the contract was made. Lexie v. State Farm Mut. Auto Ins. Co., 251 Va. 390, 394, 469 S.E.2d 61, 63 (1996). In Virginia, an insurance contract "on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Va. Code Ann. § 38.2-313. Therefore, the court will apply Virginia law to the interpretation of the insurance policies at issue in this case. See also, City Ins. Co. v. Lynchburg Foundry Co., 1989 WL 1102787 (W.D. Va. 1989) (applying § 38.2-313 to the interpretation of a comprehensive general liability insurance policy issued to Intermet Corporation to cover its operations in multiple locations, including Lynchburg Foundry in Virginia); City of Lynchburg v. Ins. Co. of Ireland, Ltd., 1990 WL 1232911 (W.D. Va. 1990) (citing § 38.2-313 in support of its holding that "[t]he law of Virginia governs all matters pertaining to the formation and performance of an insurance contract").

## APPLICABLE LEGAL STANDARDS

An insurance contract may be interpreted according to general principles of contract construction. Therefore, under Virginia law, if the language of an insurance policy is clear and unambiguous, a court will "give the language its plain and ordinary meaning and enforce the policy as written." Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 408, 419 (4th Cir. 2004). If policy language is ambiguous, that is, subject to more than one reasonable meaning, such an ambiguity must be construed against the insurer and in favor of coverage.

7

Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 636 (4th Cir. 2005). Nevertheless, "when interpreting a policy courts must not strain to find ambiguities." Id. In addition, the insurer will bear the burden of demonstrating that a particular exclusion from coverage is applicable. Bituminous Cas. Corp. v. Sheets, 239 Va. 332, 336, 389 S.E.2d 696, 698 (1990); Transcontinental Ins. Co. v. Caliber One Indem. Co., 367 F. Supp. 2d 994, 1001 (E. D. Va. 2005). Therefore, "[w]here exclusionary provisions are ambiguous, they will be interpreted in a manner that provides coverage to the insured." State Auto Property and Cas. Ins. Co. v. Gorsuch, 323 F. Supp. 2d 746, 751-52 (W.D. Va. 2004).

In Virginia, the duty to defend "is broader than the duty to indemnify because it 'arises whenever the complaint alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy.'" Resource Bankshares Corp., 407 F.3d at 636 (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990)). Nevertheless, "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend." Id. (internal citations omitted).[2]

## DISCUSSION

In the instant complaint, as well as in the underlying complaint filed in the original action, Factory Mutual claims that the explosion at the Intermet facility damaged certain merchandise

---

[2] The plaintiff has argued that Michigan law should apply to resolve this matter. Although the court has applied Virginia law as dictated by statute, the court notes that the general standards for the interpretation of insurance contracts are essentially identical under Virginia and Michigan law. Under Michigan law, when the terms of an insurance policy are unambiguous, they will be enforced as written. Henderson v. State Farm Fire and Cas. Co., 460 Mich. 348, 354 (1999). If the terms are ambiguous, however, they will be construed in favor of the insured. Id. Nevertheless, "a court should not create ambiguity in an insurance policy where the terms of the contract are clear and precise." Id. As under Virginia law, under Michigan law, the duty to defend is broader then the duty to indemnify because "an insurer has a duty to defend if the allegations of the underlying complaint arguably fall within the coverage of the policy." Bristol West Ins. Co. v. Whitt, 406 F. Supp. 2d 771, 780 (W.D. Mich. 2005).

8

and products that Intermet had produced for American Axle as well as equipment and castings that were on site and used in the production of such merchandise and products. Factory Mutual has also claimed consequential damages stemming from the destruction of the property. In sum, Factory Mutual alleges that the explosion resulted in "property damage" that should be covered by the policies.

As previously noted, both the Liberty Mutual policy and the National Union policy contain an exclusion for property damage to personal property in the care, custody or control of the insured, Intermet. The issue before the court is whether this exclusion applies in this case to preclude coverage for the damages claimed by Factory Mutual. Both insurers argue that it does.

As the parties have noted, Intermet had separate property coverage in place with American Guarantee, which was voluntarily dismissed from this suit. That coverage applied to property built, installed, serviced or sold by Intermet until completed and accepted by its customer. The purpose behind the care, custody, and control exclusion is "to prevent the general liability insurance from becoming tantamount to property insurance when property is in the hands of a bailee or lessee, or is otherwise in the custody and control of a named insured and therefore subject to damage or loss due to the named insured's own acts or omissions." Holmes' Appleman on Insurance 2d § 132.9[B] (2002).

In the context of insurance, "custody" means to have things "in charge – safekeeping. It implies temporary physical control merely, and does not connote domination, or supremacy or authority, as does possession in its full significance." Bowles v. Consolidated American Ins. Co., 11 Va. Cir. 146, 147 (1988) (quoting Aetna Ins. Co. v. Kaplan, 206 Va. 1, 3 (1965)). The term "care" includes the concepts of "charge, supervision, management, responsibility for or attention

to safety and well-being, and temporary keeping for the benefit of the owner." Neff Towing Service, Inc. v. United States Fire Ins. Co., 264 Neb. 846, 853-54, 652 N.W.2d 604, 610 (2002). And the term "control" may include "the exercise of regulation, influence, domination, or command with respect to property." 264 Neb. at 854, 652 N.W.2d at 610. As a whole, the phrase care, custody and control, as it is used in insurance policies, covers the notion of possessory control, United States Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 153, 461 A.2d 85, 88 (1983), or "the right to exercise dominion over the subject matter." Hi-Port, Inc. v. American Int'l Speciality Lines Ins. Co., 22 F. Supp. 2d 596, 599 (S.D. Tex. 1997).

In City of Virginia Beach v. Aetna Cas. and Surety Co., 426 F. Supp. 821, 825 (E.D. Va. 1976), the Court addressed an insurance policy that included an exclusion to property damage coverage for "injury to or destruction of . . . property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control." In that case, the City (the insured) obtained an easement from abutting landowners to enter and remove parts of their land for the purpose of enlarging the canal channel and repairing bulkheads. 426 F. Supp. at 824. The dredging unexpectedly caused damage to the landowners' land and bulkheads. Id. The landowners filed suit against the City, and the City sought coverage from Aetna, its insurer. Id. Aetna denied coverage based, in part, on the "care, custody or control" exclusion in the insurance policy. Id. at 825. The Court concluded that the exclusion applied to preclude coverage for the damaged bulkheads because "the City had a duty to exercise care, custody and control over the bulkheading pursuant to its obligations to maintain, repair or reconstruct the bulkheading under the easement agreement." Id.

10

By contrast, in Bituminous Cas. Corp. v. Sheets, 239 Va. 332, 389 S.E.2d 696 (1990), the Virginia Supreme Court held that the care, custody or control exclusion did not apply to exclude coverage. In this case, Sheets was a subcontractor hired to perform certain repairs to the City of Portsmouth's sanitary sewer system. 239 Va. at 333, 389 S.E.2d at 697. While Sheets was performing work to install new pumps in one part of the system, a faulty joint in an area of pipe 15 to 20 feet away burst and flooded the station with sewage. Id. at 334, 389 S.E.2d at 697. Sheets had not worked in the area of the rupture, nor was he responsible for that area according to the terms of his contract. Id., 389 S.E.2d at 697. The Court held that the joint which burst was not one on which Sheets had performed any work and that "[i]t was no more part of his responsibility under his contract than were other joints on the same pipeline located miles away." Id. at 336, 389 S.E.2d at 698. Although Sheets was responsible for certain maintenance work in the station, the Court concluded that "he was in no sense entrusted with the overall care, custody, or control of the station itself." Id., 389 S.E.2d at 698. Therefore, the Court held that the exclusion was inapplicable. Id., 389 S.E.2d at 698.

As these two cases demonstrate, the key to the applicability of the care, custody or control exclusion appears to be the level of possessory control, responsibility, or supervision held by the insured with respect to the property. In this case, American Axle had entrusted certain equipment to Intermet to be used in the manufacturing process for product which would then be sold to American Axle. Intermet physically possessed that property at its location and was responsible for its use in the manufacturing process.

Furthermore, with regard to this equipment on site at Intermet to be used in the production process, Factory Mutual itself alleged, in its underlying complaint, that:

11

> 10. In conjunction with the subject Contract, American Axle supplied certain **bailed property** which consisted of tooling supplies and material to Defendant which were to be used in the production of the products and materials ordered under the Contract.
>
> 11. The tooling supplies and materials provided to Defendant were **bailed property** and controlled by Paragraph 19 of the Standard Purchase Order Terms and Conditions.
>
> . . .
>
> 25. As a result of the Defendant's breach, American Axle's bailed property, which was on the Defendant's premises **and within the Defendant's possession and control**, was lost, inaccessible, unuseable and/or destroyed, and American Axle thereby sustained actual property losses in this occurrence.

(Emphasis added). See Plaintiff's Memorandum of Law in Opposition to Liberty Mutual Fire Insurance Company's Motion to Dismiss and National Union Fire Insurance Company of Pittsburgh, PA's Motion to Dismiss, Exhibit F. In general, although a plaintiff is not bound to expound all the facts in its complaint, once it does so, it will be "bound by such exposition." Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998). In this case, Factory Mutual itself characterizes the property located on Intermet's premises as "bailed property" and property "within the Defendant's possession and control."

Factory Mutual has argued, however, that the term "personal property" is ambiguous and that it should be permitted to explore this issue in ongoing discovery. The court finds that the term "personal property" is unambiguous in the context of these policies. Personal property is generally defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary (8th ed. 2004). Courts have held that "the term 'personal property' as used in the 'care, custody or control' exclusion is unambiguous. Personal property means 'everything that is the subject of ownership, not coming under the denomination of real estate.'" See Hartford Fire Ins. Co. v. B. Barks & Sons, Inc., 1999 U.S.

Dist. LEXIS 7733, * 20 (E.D. Pa. 1999) (quoting Rousseau v. City of Philadelphia, 100 Pa. Commw. 173, 179, 514 A.2d 649, 652 (1986)).[3]

There is no argument that the equipment at issue in this case is real property, therefore, by default, it is classified as personal property and subject to the operation of the care, custody or control exclusion. Intermet physically possessed the equipment provided to it by American Axle as a bailment to be used in its production process for the manufacture of American Axle product, and Intermet was responsible for that equipment while it was in place at its facility. Therefore, the court finds that the damage to this property was not covered by either the Liberty Mutual or the National Union policies based upon the exclusion for damage to property in the care, custody or control of the insured.

There is a second type of property at issue in this case, however. Intermet also possessed at its facility certain merchandise which had been manufactured by Intermet for American Axle and not yet shipped. Liberty Mutual and National Union contend that such product was in the care, custody or control of Intermet at the time of the explosion and that coverage for the damage to that property is therefore excluded. In the alternative, Liberty Mutual and National Union assert that, based upon the terms of the Purchase Order between Intermet and American Axle, the undelivered product was still owned by Intermet and any damage to that property was also excluded from coverage based upon the exclusion in the policies that covers "[p]roperty damage

---

[3] Factory Mutual has alleged that some courts have held that the term "property" is ambiguous. See, e.g., Bigelow-Liptak Corp. v. Continental Ins. Co., 417 F. Supp. 1276, 1287 (E.D. Mich. 1976). To the extent that Michigan courts would find the term "personal property" ambiguous, the court disagrees. Furthermore, one Michigan court has also noted that Michigan cases "almost univerally hold that where the insured has brought property onto his premises or in some way controls it to the exclusion of all others that the exclusionary clause does in fact apply." Id. at 1288. This is essentially the situation that exists with regard to the equipment at issue in this case.

13

to property you own, rent or occupy."

In its original complaint against Intermet, Factory Mutual asserted that "[o]n or about April 10, 2000, the initial contract was revised by Purchase Order No. 9NI0275, and the Standard Purchase Order Terms and Conditions, which are the written instruments codifying the contract between American Axle and the Defendant." Paragraph 2 of that purchase order sets forth certain shipping and billing procedures including packing and routing procedures and requires delivery of the product to American Axle followed by the production of an invoice and payment for the product. See Exhibit A to Underlying Complaint, Purchase Order, p. 1 ¶ 2. The purchase order also specifies that the shipments are to be F.O.B. Origin, which indicates that title to the goods would pass upon their delivery by the seller, Intermet, to a carrier for shipment to American Axle. See Williston on Contracts § 52:11 (4th ed.); Va. Code Ann. §8.2-401(2)(a). Therefore, according to the terms of the purchase order, any product located at Intermet and not delivered to the carrier for shipment to American Axle would have been owned by Intermet. As such, damage to that property would have been excluded by the exclusion for damage to property owned by the insured.[4]

Even if any other agreements between Intermet and American Axle provided that title passed to American Axle prior to shipment, the damage to the product manufactured by Intermet for sale to American Axle would be excluded on the basis of the care, custody or control exclusion because Intermet had possessory control of the product at its facility. In Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869 (Ky. 2002), a fire at the Heaven Hill

---

[4] The court notes that the date of the purchase order is after the date of the explosion that caused the property damage in this case. Therefore, the terms between the parties prior to that date may have been different. Regardless, as stated below, the damage to the product would have been excluded by the provisions of the policy.

Case 7:06-cv-00462-GEC   Document 31   Filed 09/26/07   Page 14 of 18   Pageid#: 480

facility in Nelson County, Kentucky destroyed seven warehouses which contained bourbon whiskey that had previously been sold to various customers. Heaven Hill was storing the whiskey on its premises until it was properly aged and could be bottled and shipped to those customers. 82 S.W.3d at 871. After the whiskey was destroyed, the buyers sued Heaven Hill claiming negligence. Id. After settling the claims with its customers, Heaven Hill then filed a claim for coverage under its commercial general liability policy with Kemper. Id. The policy included an exclusion for damage to personal property in the care, custody or control of the insured. Id. at 873. After noting that the care, custody or control exclusion was unambiguous, the Court went on to hold that:

> There is no dispute that the Care, Custody or Control Exclusion, read in isolation, applies to the facts of this case. Heaven Hill sold the bourbon destroyed in the fire to its customers, making it the personal property of others. Heaven Hill also stored the bourbon in its warehouses, which were located on its premises and controlled by its employees, so the bourbon was in Heaven Hill's care, custody or control. Whatever the effect of other provisions, the exclusion covers the bourbon that was destroyed in the fire.

Id.

Likewise, in this case, the manufactured product was either owned by Intermet or it was being temporarily stored on behalf of American Axle in the Intermet facility which was controlled by Intermet's employees. In any case, the damage to this product was not covered under either policy by operation of either the owned property exclusion in the former case or the care, custody or control exclusion in the latter case.

Factory Mutual has also argued that a motion to dismiss is not appropriate at this point in this case because it has alleged many different types of damages in the underlying complaint including: recovery of lost production, loss of income on loss of sales, additional freight, tooling

15

related costs, outsourcing cost, travel and salaried cost, engineering and testing, recovery, tech center payroll, outsourcing payroll, claim documentation, claim preparation, and continuing extra caps. Factory Mutual concludes that it is not clear at this point in the litigation of this case that none of those categories of damages would be covered by the relevant insurance policies.

The court finds this argument unavailing. In <u>AIU Ins. Co. v. Mallay Corp.</u>, 938 F. Supp. 407 (S.D. Tex. 1996), the insured received a turbine from Dow Chemical for burnishing. During the performance of its work, the turbine was damaged and had to be repaired at another location. 938 F. Supp. 408-409. Dow claimed damages for the cost of the repair as well as resulting economic losses. <u>Id.</u> at 409. The insured attempted to file a claim for both the damage to the turbine and the economic losses, which it characterized as Dow's loss of use of its plant. <u>Id.</u> at 410-11. First, the Court found that the damage to the turbine was excluded by the care, custody or control exclusion because it "was tangible personal property in the care, custody or control of Mallay and suffered physical injury." <u>Id.</u> Next, the Court held that it was the loss of use of the turbine, not the loss of use of its plant, that resulted in Dow's claimed economic losses. <u>Id.</u> at 411. Those losses, however, were also excluded from coverage under the terms of the policy because the care, custody or control exclusion applied to this property damage, and the policy defined property damage as "physical injury to tangible property, *including all resulting loss of use of that property.*" <u>Id.</u> (Emphasis in original).

Likewise, both the Liberty Mutual and National Union policies define property damage to be "physical injury to tangible property, including all resulting loss of use of that property." Regardless of how Factory Mutual may attempt to characterize the damages it claims, all of those damages stem from the destruction of its equipment or the product manufactured for it. Any

16

damages claimed for that property directly are excluded as either owned property or property in the care, custody or control of Intermet. Therefore, any damages that resulted from the loss of use of that property are also excluded by the plain language of the policy.

Finally, Factory Mutual is correct that, in Virginia, the duty to defend is broader than the obligation to pay under the terms of an insurance contract. See Resource Bankshares Corp., 407 F.3d at 636 (quoting Brenner v. Lawyers Title Ins. Corp., 240 Va. 185, 397 S.E.2d 100, 102 (1990)). A waiver to contest coverage resulting from a breach of the obligation to defend a claim, however, would not arise "if it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations" because, under those circumstances, the insurer "has no duty even to defend." Id. (internal citations omitted). That is precisely the situation presented in the instant case. As previously discussed, the court finds that all of Factory Mutual's claims are precluded by the plain language of the exclusions included in the policies at issue in this case. As a result, neither Liberty Mutual nor National Union was under a duty to defend its insured in the underlying litigation.[5]

## CONCLUSION

For the reasons stated herein, the court finds that coverage for the damage to American Axle's equipment on site at the Intermet facility was excluded by the terms of the insurance policies issued by Liberty Mutual and National Union to their insured, Intermet, because that equipment was in the care, custody or control of the insured. Furthermore, whether the product being produced for American Axle was owned by Intermet or by American Axle, coverage for

---

[5] Because the court finds that the care, custody or control exclusion operated to preclude coverage for all the claims asserted by Factory Mutual, it is not necessary to address the argument of National Union that its coverage was not triggered in the first instance because the underlying limits of insurance had not been exhausted.

17

the damage to that property was also excluded either as owned property or as property in the care, custody or control of the insured, respectively, under the plain language of the policies. As a result, the defendants' motions to dismiss will be granted.

The Clerk of Court is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 26th day of September, 2007.

/s/ Glen E. Conrad
United States District Judge